No. 22,383.

FRED STEFAN, *Appellee,* v. THE RED STAR MILL AND ELEVATOR
COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injury—Refusal of Employer to Arbitrate.* The
facts considered, and *held,* the conduct of an employer was equivalent
to refusal to consent to arbitration, and authorized the workman to
resort to action to recover compensation.

2. SAME—*Injury—Permanent Loss of Use of Eye.* The facts considered,
and *held,* the plaintiff suffered permanent loss of the use of an eye
as the direct result of injury, within the meaning of pertinent pro-
visions of the workmen's compensation act.

3. SAME—*Injury—Elements of Proper Compensation.* In addition to
the loss of an eye, the plaintiff suffered permanent partial disability
on account of partial paralysis of one side of his body. *Held,* he was
entitled to additional compensation.

4. SAME—*Methods of Computing Compensation.* Provisions of the work-
men's compensation act relating to amount of compensation inter-
preted, and methods of computing the plaintiff's compensation stated.

5. SAME—*Trial—No Prejudicial Error.* Various assignments of error
considered, and held to be without substantial merit.

Appeal from Sedgwick district court, division No. 1;
RICHARD E. BIRD, judge. Opinion filed February 7, 1920.
Modified and affirmed.

*John Madden, C. E. Cooper,* and *John Madden, jr.,* all of
Wichita, for the appellant.

*Robert C. Foulston, A. M. Ebright,* and *George H. Beach,* all
of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for compensation. The
plaintiff recovered, and the defendant appeals.

The defendant complains because the plaintiff did not pro-
ceed by arbitration. The plaintiff was injured on August 25,
1917. On December 19, written demand for compensation was
made. The Miller's Mutual Casualty Company took charge of
the matter for the defendant, through its secretary, Adderly,
and its attorney, Holmes. Adderly promised to give the plain-

tiff's attorney an answer respecting compensation, and never did so. A letter to Holmes dated January 31, 1918, and subsequent conversations with Holmes, were unproductive of result. Checks for payments to the plaintiff, delivered by Holmes, stopped coming, and Holmes notified the plaintiff's attorney he was out of the matter, but would write Adderly. Subsequently, the plaintiff learned the casualty company was represented by Cooper as attorney, and negotiations were conducted with him. On July 8, 1918, Cooper reported that he had a letter from Adderly stating that all liability, or further liability, to the plaintiff was denied. Cooper was told that if the plaintiff and defendant could not settle and could not arbitrate, the plaintiff would be obliged to sue, and was asked if he would waive arbitration. Cooper replied he had no authority to waive arbitration. The plaintiff's attorney said he had made all the effort he could in the matter, and unless consent to arbitration were given, he would bring suit. Consent to arbitration, expressed in writing or otherwise, was not given, and suit was brought ten days later.

The subject of trifling with the duty, clearly and definitely imposed by the statute, to consent to arbitration in writing, is discussed in the opinion in the case of *Roper v. Hammer,* post, p. 374. Within the principles there recognized, the plaintiff was well within his province in resorting to the remedy by action.

With a general verdict for $2,490, the jury returned the following findings of fact:

"Question 1. Do you find that the plaintiff received the injury of which he complains in this action, while working in and about the mill and elevator of the defendant company, on August 25, 1917? Answer: We do.

"Question 2. Did such injury arise out of and in the course and scope of his employment? Answer: Yes.

"Question 3. Is plaintiff's injury, independent of the injury to his eye, of such a nature that he will suffer a disability, partial in character but permanent in quality, for a period of more than eight years from the date of his injury, received on August 25, 1917? Answer: It is.

"Question 4. Has the plaintiff, by reason of the injury herein complained of, sustained the permanent loss of the use of one of his eyes? Answer: Yes, a partial permanent impairment.

"Question 5. What was the average weekly wage received by the plaintiff from the defendant in the course of his employment by the

defendant, based upon a period of fifty-two weeks immediately prior to the 25th day of August, 1917?  Answer: $16.08."

The jury also returned two other findings, which follow:

"1. If you find that plaintiff was injured, state whether such injury has resulted in total or partial disability.  Answer:  Partial.

.   .   .   .   .   .   .   .   .   .   .   .   .

"3. If you find such injury resulted in a partial disability, state what that disability consists of.  Answer:  A partial permanent [disability] of one eye, a semiparalyzed condition of the left side of his body."

Judgment was rendered on the general verdict.  Afterwards the general verdict was set aside, and judgment was rendered on the findings for the sum of $3,296.40.

Section 3 of chapter 226 of the Laws of 1917 is devoted to the subject of amount of compensation.  The section is divided into three major paragraphs.  Paragraph one deals with medical, surgical, hospital, and related benefits; paragraph two relates to compensation when death results from injury; and paragraph three relates to compensation when death does not result.  Paragraph three is subdivided.  Subdivision "c" commences with an unnumbered introductory paragraph which reads as follows:

"(c) Where disability, partial in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section, but shall not be entitled to any other or further compensation for or during the first week following the injury.  Thereafter, compensation in a lump sum shall be paid as provided in the following schedule, the average weekly wages to be computed as provided in section 4 of this act, and the compensation to be in no case less than $6 per week nor more than $12 per week."

Then follow twenty-three numbered paragraphs.  The first eighteen deal with specific injuries, as indicated by paragraph 15, which reads as follows:

"(15) For the loss of an eye, or the complete loss of the sight thereof, 50 per cent of the average weekly wages during 110 weeks."

Paragraphs 10 and 16 are interpretative, and are similar in character to paragraph 22, which reads as follows:

"(22) *Loss of use.*  Permanent loss of use of a hand, arm, foot, leg or eye, as a direct result of an injury, shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye."

Paragraph 19 and a portion of paragraph 23 read as follows:

"(19) Should the employer and employee be unable to agree upon the amount of compensation to be paid in any case of injury not covered by the schedule, the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement; provided, however, in case of partial disability not covered by schedule the workman shall receive during such period of partial disability not exceeding eight (8) years, 60 per cent of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury.

"(23) The compensation for the foregoing specific injuries shall be in lieu of all other compensation, except the benefits provided in paragraph 1 of this section."

It is quite clear that the jury ignored injury to the eye, and allowed compensation for disability resulting from paralysis, at the rate of six dollars per week for one week less than eight years. The evidence was that the injury to the eye did not destroy vision. If the uninjured eye were lost, the plaintiff could see, for a time and to a limited extent, with the injured eye. The injury, however, was such as to distort and constrain the angle of vision. Use of both eyes causes double vision, and in order that the plaintiff may see, it is necessary that the injured eye be kept covered. There is no remedy for the condition, and the court holds the plaintiff has suffered permanent loss of the use of an eye, within the meaning of paragraph 22 ·of subdivision "c."

The court increased the amount of the judgment $806.40. How the amount of the increase was arrived at is not disclosed. It should have been equal to fifty per cent of the workman's average weekly wages, $16.08, for 110 weeks. Fifty per cent of the weekly wages being less than $12, the limitation contained in the introductory paragraph does not, of course, apply.

While objecting to compensation for disability resulting from injury to the eye, the defendant contends that if the workman be allowed such compensation, he cannot also be compensated for the disability resulting from paralysis. The subject of partial disability of this character is covered by paragraph 19 of division "c." The court is of the opinion paragraph 19 is not restricted by the provisions of paragraph 23. Paragraph 23 clearly means that the compensation allowed for specific injuries is in lieu of all other compensation

for those injuries. The legislature evidently believed the loss of a specific member or organ deserved the compensation stated, whatever else occurred. If, however, additional injury should increase the workman's partial disability, either permanently or temporarily, he should receive additional compensation.

How compensation provided for in paragraph 19 shall be computed is a question of some difficulty. The earnings before and after injury referred to are evidently average weekly wages, computable in the usual way; but no maximum and minimum limit is affixed. In one sense that which is referred to in the introductory paragraph of division "c" as "the following schedule," ends with paragraph 18. Paragraph 22, however, is as much a part of the schedule as paragraph 10 or paragraph 16; so that, to the extent necessary, all the numbered paragraphs may be said to constitute the schedule. Major paragraphs 1 and 2 of section 3 fix maximum and minimum amounts of compensation. Major paragraph 3 discloses a distinct purpose to fix a weekly wage basis with a maximum and minimum limit for the computation of compensation in all cases, unless paragraph 19 of division "c" be an exception. It will not be assumed the policy was abandoned in paragraph 19, and the court is of the opinion the provision contained in the introductory paragraph of division "c"—"the compensation to be in no case less than $6 per week nor more than $12 per week"—applies to the disability covered by paragraph 19. Without proof that 60 per cent of the difference between earnings before and after injury would equal or exceed $6 per week, the plaintiff is entitled to the minimum for the period of eight years less one week, on account of permanent partial disability found by the jury to exist, independently of the disability resulting from injury to the eye.

The plaintiff admits receiving certain payments, which should be considered in the final computation. The parties have stipulated respecting the benefits provided for in the first paragraph of section 3, and that subject is at rest.

Nothing else of sufficient importance to require extended discussion is presented by the appeal. Some expert testimony was objected to, on the ground the questions propounded assumed the existence of facts not in evidence. There was ample

circumstantial evidence from which existence of the facts might be inferred. Evidence which it is claimed was wrongfully rejected was not produced at the hearing on the motion for a new trial. There was no evidence of deliberate intention on the part of the workman to cause his injury, and there was no evidence that he willfully failed to use a guard or protection against accident, because there was no evidence he had been furnished with any such safeguard. Since the facts were fully found, discussion of the instructions is unnecessary. The findings were all sustained by ample evidence. The judgment having been modified during the term at which the verdict was returned, it is immaterial that a motion for a new trial had already been overruled and judgment rendered.

The cause is remanded to the district court, to correct the judgment according to the views which have been expressed, and the judgment as corrected is affirmed.