No. 26,265.

W. C. LANE, *Appellee*, v. SONKEN-GALAMBA CORPORATION, *Appellant.*

### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Scheduled Allowance—Additional Allowance.* Following *Stefan v. Elevator Co.*, 106 Kan. 369, it is held that a workman who sustained an injury making it necessary to amputate two phalanges of a finger, and also caused disabilities to the hand, wrist and arm, permanent in character, is entitled to compensation beyond the scheduled allowance for the loss of a part of the finger for the additional permanent partial incapacity.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed July 11, 1925. Affirmed.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave,* all of Kansas City, for the appellant.

*W. W. McCanles,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action W. C. Lane recovered compensation for an injury suffered while he was in the employment of Sonken-Galamba Corporation, and from the award the defendant appeals.

---

Workmen's Compensation Act, C. J. § 89.

Lane v. Sonken-Galamba Corporation.

While engaged in the service of the defendant, one of the plaintiff's fingers was mashed by a pair of electric shears which he was operating.  He was at once taken to the office of the defendant's doctor, who amputated the finger below the second joint.  Weekly compensation was paid to him by the defendant to the extent of $75.64.  Defendant offered to pay plaintiff the scheduled amounts for the loss of the first and second phalanges of the finger, after deducting the amount already paid, the total amount being $152.90. Plaintiff declined to accept the offer, claiming that he had and always will have a permanent partial incapacity in addition to the two phalanges of his finger, and was entitled to receive the amount prescribed by statute for such incapacity.  In the action brought to recover this compensation the jury found that plaintiff had suffered an injury in addition to the loss of a part of the finger; that the tendon of the finger was affected so that it could not be flexed; that it was stiff and in the way, and that the end of the finger after amputation is sore and swollen.  The court approved the findings of the jury and held that while the amputation was properly and skillfully done and the results accomplished as well as any competent surgeon could have obtained, the plaintiff had sustained an injury independent of the injury caused by the loss of a part of the second finger, in that the injury left the remainder of the second finger stiff, sore and sensitive at the point where it was cut off and slightly red and swollen to a certain extent, which condition is ascertainable by objective examination; that is, by looking at it.  It was therefore adjudged that he was entitled to recover for the loss of a part of his second finger, $152.90, less the amount which the defendant had paid, and that for the permanent partial disability resulting from the injury plaintiff should recover $6 per week for eight years, or a total of $2,496.

There was testimony by physicians and surgeons to the effect that there was neuroma at the end of the finger; that it was not flexible, but stood out in such a way as to interfere with the use of the hand, causing a loss of its gripping power.  The plaintiff himself testified that the finger is sensitive; when he runs it against anything it hurts; that it interferes with his grip and causes nervous cramps at times and pains in his hand and arm.

Physicians and surgeons called by the defendant testified that they did not think that there was a neuroma at the end of the stump, but there was a hyperæsthesia and tenderness there.  They

also said that by reason of the amputation and severing of the tendon there was a lack of flexion, but that this was the result in all such amputations. One physician stated that no finger amputated where this one was, that the witness ever saw, could be pulled down properly. Another physician testified that by the loss of the finger at the second joint, the plaintiff lost the ability to bend the distal part. That the loss of flexion is due to the flexion tendon not catching into the end of the bone, and because he has a short fulcrum with which to catch into the end of the bone. The finger sticks out and gets in the way, but this is something that occurs in amputation, and if he touches something or comes in contact with it there is pain.

It is the contention of the defendant that the loss of part of the plaintiff's finger is a specifically scheduled injury and that compensation for the scheduled loss is the full measure that may be allowed. It is argued that there was one injury, and that the pain and other effects resulting from the injury are incidental to the amputation of the finger and that the award is limited to the $152.90 provided by the statute for the loss of two phalanges of the finger. Cases may arise where the loss of the use of a finger or other member will be the only loss sustained as the result of an injury and amputation, and the scheduled compensation would in that event be the amount allowed for such loss. The statute in equally plain terms provides, however, for compensation for incapacity resulting from an injury, and where an injury results in not only the loss of a member but also in permanent partial incapacity, the injured party is entitled to compensation for such incapacity. Defendant's contention to the contrary cannot be regarded as an undetermined question in this state. In *Stefan v. Elevator Co.*, 106 Kan. 369, 187 Pac. 861, the workman suffered the loss of an eye, and in addition to the deprivation of an eye the injury caused other results, namely, partial permanent disability, and for these disabilities he was held to be entitled to additional compensation. This ruling has been upheld in several later decisions. (*Emry v. Cripes,* 110 Kan. 693, 205 Pac. 598; *Hiatt v. Uhrich,* 111 Kan. 643, 208 Pac. 559; *Burchett v. Manufacturing Co.,* 114 Kan. 138, 217 Pac. 284; *Smith v. Packing Co.,* 115 Kan. 874, 225 Pac. 110; *Hoops v. Utilities Co.,* 116 Kan. 598, 227 Pac. 332.) Some authorities from other states are cited where different views have been expressed, but the difference in the holdings are based largely upon statutes unlike our own. Here the in-

Lane v. Sonken-Galamba Corporation.

jury caused not only the loss of the end of his finger, but it also caused pain, and impairment of the hand, wrist and arm up to the elbow which is partial and permanent in character: All the doctors who testified agreed that the end of the stump of the finger that remained is sore. One of them said that it was in the nature of a neuroma and another a tenderness which he called hyperæsthesia; but whatever it may be called, it appears that when he uses the hand and the stiff stump touches any hard substance it necessarily causes pain. The tendon connecting the finger with the hand is injured so that there is no flexion of the stump, and he has no power to pull it down. All the testimony is to the effect that he has lost the ability to bend the finger, so that the sore, stiff stump sticks out and gets in the way of his work, and when he uses the hand and the finger touches an object there is pain. It is also to the effect that the condition causes a loss of the gripping power of the hand and interferes with its use in performing labor. There was testimony, too, that the plaintiff has cramps in his hand and pains in his hand and arm. The evidence sufficiently supports the finding that in addition to the loss of a part of a finger he suffered other injuries which impaired his efficiency and earning power and constitutes partial permanent incapacity. For this loss he was entitled to the compensation awarded him. We find nothing material in the other objections mentioned by the defendant.

The judgment is affirmed.