No. 29,027.

THE EDGAR ZINC COMPANY, *Appellant*, v. JOE HAMER, *Appellee.*

(285 Pac. 550.)

Opinion filed March 8, 1930.

*J. A. Brady,* of Cherryvale, for the appellant.

*John Bertenshaw* and *Kirke C. Veeder,* both of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal and cross appeal from a judgment of the district court of Montgomery county on a workman's compensation case.

The plaintiff is a corporation which owns and operates a zinc smelter at Cherryvale.

The defendant, Joe Hamer, for more than a year immediately prior to September 22, 1925, was an employee of plaintiff. On that date his left arm was severely burned by an explosion of molten metal, which totally incapacitated him for some time. Without an arbitral or other formal award of compensation plaintiff supplied Hamer with medical treatment at an expense of $150 and made periodical payments until it had paid him a total of $2,289.45. It then brought this action narrating the facts and alleging that Hamer's burns healed in a few weeks, but that he had neglected to exercise his arm so that it was swollen from disuse. It alleged plaintiff and defendant could not agree as to the extent of the injury nor concerning the character and quality of his disability, the amount still due, if any, or the amount Hamer was able to earn. It alleged it had paid defendant a greater sum as compensation than the weekly amounts prescribed by statute, and that it had always stood ready to make a lump-sum settlement, less the legal deduction it was entitled to. Plaintiff's petition concluded, in part, thus:

"Wherefore, the plaintiff makes this written application to the court that the court act as an arbitrator and to hear and determine the matters in controversy herein, or, that if the court does not choose to arbitrate said matter, then the court appoint an arbitrator as provided by law in such cases and that the court, or arbitrator determine the amount of compensation, if any, due, the character and quality of the disability of the defendant, the period for which payment of compensation should have continued, and the amount of earnings the defendant is able to earn. . . .

"That the plaintiff have a further order of the court, or the findings of the arbitrator, relieving the plaintiff from further payment of compensation, that if in case the arbitrator or the court would find there is any further compensation due, then that said plaintiff be given a deduction or twenty per cent of said amount heretofore paid to the defendant."

Defendant's answer admitted his former employment by plaintiff. He also recited the extent and severity of the injury he had sustained in plaintiff's service, and—

"That he is wholly unable to use his left arm, shoulder and side . . . defendant's left shoulder has become atrophied, shrunken and wasted, the tonicity of the muscles attached between defendant's torso and left arm permanently partially disabled, . . . the use of the muscles and ligaments in defendant's neck and left side is permanently partially impaired in such manner that when defendant attempts to use his right arm, he suffers excruciating pains across his shoulders, . . . wholly preventing him from using his right arm in work, except for very short periods of time."

Defendant concluded his answer thus:

"  .  .  .  defendant prays that the court hear and determine the matters in controversy herein between plaintiff and defendant, and that if the court does not choose to hear and determine said controversy, then that he appoint an arbitrator, as provided by law, with full authority to determine the amount of compensation due defendant, the character and quality of his disability and the period for which payment of compensation should be paid to defendant."

On the pleadings thus summarized the parties presented their evidence. This was followed by findings of fact and conclusions of law, but whether these were made by the court or by its judge sitting in the capacity of an arbitrator is one of the questions involved in this appeal. Passing that point for the nonce, the findings summarized were that defendant's average weekly wages had been $21.70; that he had been totally disabled six weeks; that he had been fully paid therefor under the statute; that after his total disability ceased he was capable of earning $2 per week; and—

"5. That as a result of the burns at the time of the injury, and for a considerable length of time, the defendant, Hamer, was unable to use his arm, and as a result, either of the disuse, or of infection of the joint caused by the burn, which the court is unable to determine from the evidence, the shoulder and joint became stiff and the muscles of the arm and shoulder became atrophied.

"6. As a result thereof the defendant, Hamer, will be permanently partially disabled.

"7. That such condition of said muscles and arm is not caused by any unreasonable refusal of the defendant to submit to a surgical operation."

"CONCLUSIONS OF LAW.

"1. That there remains due the defendant compensation for the remainder of the time, $2,721.85, in a lump sum with interest at six per cent, from January 15, 1929."

Plaintiff filed a motion asking for additional findings and to be allowed the statutory discount of 20 per cent on the amount of compensation allowed. The court modified its original findings by eliminating that which referred to his future earning capacity and revised the sixth finding thus:

"6. As a result thereof the right arm of the defendant, Hamer, became and is, and will ever remain, wholly useless and an impediment rather than an aid to the defendant, and he will be permanently partially disabled."

The court also reduced the award to $2,621.85. Plaintiff's application to be allowed a 20 per cent discount by satisfying the award in cash was denied and judgment was entered for $2,621.85 to be paid in a lump sum without deduction.

Plaintiff appeals. Defendant also appeals, contending that he should have been allowed a further sum of $2,278.50 for the loss of the arm itself, on the theory that its utter uselessness was equivalent to its specific loss.

Plaintiff's foremost contention is that the trial court took an entirely erroneous view of the nature of the proceedings. It insists that it did not invoke the court's jurisdiction to try a lawsuit between it and the defendant, but to appoint an arbitrator or serve as an arbitrator in a proceeding under the compensation act. While plaintiff asked for an arbitrator or that the court itself serve in that capacity, it is not quite clear that this aspect of the matter was specifically called to the trial court's attention at the proper time. A significant recital in the judgment roll reads:

"Now, on this 8th day of November, 1928, . . . this cause comes on regularly for hearing pursuant to assignment. . . . Thereupon, both parties duly waive a jury and agree to submit said cause to the court for final hearing and determination. . . ."

That recital suggests very strongly that the matter of procuring the services of an arbitrator had been dropped. The proceedings are spoken of as a *cause* which had been regularly assigned. A jury was formally waived, which indicates that the parties *thought* they were trying a lawsuit, not a proceeding before an arbitrator. The journal entry also states that the parties agreed *to submit the cause to the court for final determination.* That recital would be inapposite to proceedings before an arbitrator or to a court merely sitting as an arbitrator.

But what practical difference did it make whether the presiding judge of the district court misconstrued the capacity in which he was asked to function in this case—as an arbitrator or as a judge? None, that we can see, so far as concerns the ascertainment of the facts upon which the plaintiff's liability to pay compensation depends. If the matter had been submitted to an arbitrator, either party aggrieved might have had a limited review before the district court; and the findings and award might be vacated or modified by the court. While that technical routine may not have been consciously followed by the court, yet that is virtually what did occur after plaintiff filed its motion for additional findings and for a new trial. Surely plaintiff did not then hold the view that the proceedings were before the court or its presiding judge as a mere arbitrator,

otherwise it would not have asked for a new trial—that being foreign to the practice before an arbitrator.

But from the inception of the proceedings there was one matter which plaintiff never did lose sight of and never waived; that was its statutory right to satisfy any award against it by paying 80 per cent thereof in cash. (R. S. 44-525, 44-531.) Plaintiff had never been in default in paying compensation to defendant. It had never declined to arbitrate. It always stood ready to pay whatever was required of it. To determine that point, whether by arbitrator or by court, plaintiff instituted this proceeding. That was the substance of the matter to be decided and all that was to be decided; and whether the sum of $2,621.85 which the order of court required the plaintiff to pay defendant be designated as an award or as a money judgment, if it is to stand at all it is subject to a 20 per cent reduction—a statutory discount which the legislature bestows upon an employer who manifests a whole-hearted readiness to do for his injured workman all that the compensation law requires of him. (R. S. 44-531, 44-529.) Nowhere in the compensation act which governed this case was there any provision for requiring an employer to pay a lump-sum award or lump-sum judgment where that employer has not been at fault or recalcitrant in the slightest degree. Lump-sum awards without deductions are made for specific injuries. (R. S. 44-510.) Lump-sum awards are also given by trial courts at their discretion in cases where the injured workman had to take the initiative to get what he was entitled to. (R. S. 44-534.) But here the employer itself took the initiative to ascertain what, if anything, it ought to pay after already paying its workman $2,289.45.

Passing to other matters complained of by appellant, finding No. 5 is criticized as uncertain and in conflict with finding No. 7. This court can discern no conflict. Touching its alleged uncertainty, it is immaterial whether the uselessness of the arm was primarily caused by the burning or secondarily by prolonged disuse occasioned by unbearable pain which was a consequence of the burning. (*Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808.) Plaintiff calls attention to the allegations of its petition and the evidence in accord therewith to the effect that it had offered to provide defendant with light work which he could easily do which would enable him to use his arm and thereby restore its functions. But that attitude on the part of plaintiff, while commendable, could not defeat de-

fendant's right to compensation since he testified that it pained him too severely to do any work, and the trial court, or the trial judge as arbitrator, gave that testimony full credence. Under all the evidence on this phase of the case this court cannot say that it was defendant's duty to undergo an operation to break up the stiffened joints of his arm, nor was it satisfactorily shown that such an operation would be very likely to be successful. (*Gilbert v. Independent Construction Co.*, 121 Kan. 841, 250 Pac. 261.)

Plaintiff projects another difficult problem for this court to solve. Defendant is presently accorded an award or judgment of $2,621.85. He had already received the aggregate sum of $2,289.45 before these proceedings were begun. Plaintiff's argument is to this effect: Based upon the findings of fact, the compensation to which defendant was entitled should be governed by subdivision 12 of section 3 of the compensation act then in force (R. S. 44-510), to wit: "(12) For the loss of an arm, 50 per cent of the average weekly wages during 210 weeks." Hamer's average weekly wages had been $21.70. Half of that amount, $10.85, for 210 weeks would be $2,278.50, all of which and somewhat more had already been paid. Reasoning therefrom, plaintiff says that the award or judgment for $2,621.85 in addition to what it has already paid was manifestly erroneous. But while it is not clear on what basis the award or judgment of $2,621.85 was made, it is clear that no part of the periodical payments aggregating $2,278.50 paid to defendant prior to plaintiff's application for the appointment of an arbitrator, was paid for the loss of defendant's arm, but for incapacity occasioned by the burning and its consequence. Counsel for defendant suggests "that the trial court was not required to perform an arithmetical calculation to demonstrate the correctness" of his award or judgment. That suggestion is too broad. The trial court or arbitrator may take any reasonable view of the facts supported by evidence, but once those facts are thus ascertained the findings ought to justify the award, and the legality and accuracy of the award should be readily determinable from the findings. Here it is not clear from the findings on what basis an award of $2,621.85 was arrived at. Defendant would justify it on the theory that it is the result of a computation of a balance of some unspecified award for periodical payments for permanent partial incapacity after giving credit to plaintiff for the $2,289.46 already paid to defendant. With that

as a cue, and by consulting the findings of fact, we may determine for ourselves what the award ought to be, viz.:

| | |
|---|---:|
| Average weekly wage | $21.70 |
| Sixty per cent of $21.70 | 13.02 |
| Period of total disability (less one week) | 5 weeks |
| Five weeks at $13.02 | 65.10 |
| Periodical payments already made | 2,289.45 |
| Deduct | 65.10 |
| Balance to credit of plaintiff as payments for permanent partial disability | $2,224.35 |
| 410 weeks at $13.02 | $5,338.20 |
| Credit as above | 2,224.35 |
| Total payments yet to be made | $3,113.85 |
| Twenty per cent discount for lump-sum payment | 622.77 |
| Net lump-sum award should be | $2,491.08 |

We do not fail to note that the weekly award for permanent partial incapacity is the same as that allowed for the first five weeks of total incapacity, but that anomaly arises from the fact that the court struck out its preliminary finding that the workman had an earning capacity of $2 per week. By so doing the court in effect held that he had no earning capacity.

Touching the cross appeal, a majority of the court is not favorably impressed with the contention that the defendant was entitled to two separate awards—one for permanent partial incapacity and another for the permanent loss of the use of the arm. The findings of the trial court do not warrant an interpretation that the defendant sustained two distinct injuries so as to make room for the operation of the rule announced in *Stefan v. Elevator Co.*, 106 Kan. 369, syl. ¶ 3, 187 Pac. 861, and later analogous cases.

It follows that so far as concerns the cross appeal the judgment of the district court is affirmed; and in plaintiff's appeal the judgment should be modified and reduced from $2,621.85 to $2,491.08. Thus modified, the judgment will be affirmed. The costs of the appeal and cross appeal should be divided.

It is so ordered.

DAWSON, J. (*dubitante*): It is not clear to me whether the defendant has suffered a permanent partial disability aside from the permanent loss of the use of his arm or not. If not, his compensation is explicitly governed by the statute:

"(12) For the loss of an arm, 50 per cent of the average weekly wages during 210 weeks."

"(22) Permanent loss of the use of a hand, arm, foot, leg or eye, as a direct result of an injury, shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye." (R. S. 44-510, subdiv. 12 and 22.)

This would entitle defendant to $2,278.50, neither more nor less.

If the findings of fact mean that defendant has suffered a permanent partial incapacity by a stiffness in his shoulder joint and through atrophy of the shoulder muscles, as well as in the permanent loss of the use of his arm (and the findings are fairly susceptible of that construction), then I cannot understand why the trial court or this court should deny him compensation therefor according to the rule announced in *Stefan v. Elevator Co.*, 106 Kan. 369, syl. ¶ 3, 187 Pac. 861; *Lane v. Sonken-Galamba Corporation*, 119 Kan. 256, 237 Pac. 875; and *Sims v. Consumers Bread Co.*, 125 Kan. 747, 265 Pac. 1114.

In all other respects I concur in the opinion of the court.

HARVEY, J. (concurring specially): To me it seems about as futile to ask a court to sit as an arbitrator in a compensation case as it would be to ask a court to sit as a referee in an accounting case. In my view the proper construction to give to the somewhat unusual proceeding brought by plaintiff is this: Plaintiff, realizing that the workman had sustained an injury compensable under the compensation act, and having paid compensation for some time, decided to ascertain the extent of its further liability and to be permitted to pay that in a lump sum with the statutory reduction of twenty per cent for such payment. With this purpose in mind this action was brought. I concur in the opinion of the court in its disposition of that question.

On the cross appeal of the workman, in which he seeks to recover for the loss of the arm as a scheduled injury in addition to recovering for temporary total disability for five weeks followed by permanent partial disability for eight years, I interpret the findings of the trial court as follows: The court did not find that an injury to the arm itself caused a loss of use of it. The court found the loss of the use of the arm only as the result, or, more accurately, one of the results, of the injury to the shoulder, all of which injury, and the results thereof, rendered the workman permanently partially incapacitated.

JOHNSTON, C. J., joins in the specially concurring opinion of Mr. Justice Harvey.