No. 29,340.

EARL VINTON ANDERSON, *Appellee*, v. THE NATIONAL REFINING COMPANY, Respondent, and THE COLUMBIA CASUALTY COMPANY, Insurance Carrier, *Appellants*.

(287 Pac. 240.)

Opinion filed May 3, 1930.

A. M. Ebright, Allen B. Burch, J. B. Patterson and P. K. Smith, all of Wichita, for the appellants.

L. J. Bond, of El Dorado, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Anderson, an employee of the refining company, suffered an accidental injury arising out of and in the course of his employment. The commissioner of workmen's compensation denied

compensation. On appeal to the district court the court allowed compensation for permanent partial disability, consisting of loss of use of claimant's left leg and foot. The employer appeals, and the question for determination is whether there was substantial evidence to sustain the judgment of the district court.

The accident occurred on July 12, 1928. The claimant came in contact with a high-tension electric wire, and a heavy charge of electricity passed through his body. He was unconscious for several hours, and was severely burned and shocked. He was given hospital treatment until December 18, 1928, when he resumed work for the employer. When injured he was a laborer, doing whatever he was called on to do in the pipe-line department of the company. When he returned to work he did so as an engineer pumper. The new work was lighter in kind, claimant's hours were longer, and he received higher wages. When the accident occurred the bottoms of claimant's feet were burned, but the scars do not hurt him any. He was also burned on his arms and head, but the scar tissue does not adhere, and does not contribute to disability. Claimant testified as follows:

"My feet and my left knee have hurt me and pained me ever since. My feet burn just like you are standing on a hot sidewalk or a hot iron; something like that. They pain me all the time, day and night. I cannot sleep when it is lightning. The goose flesh will raise on my arm like it will in the winter time when it is lightning, and I just walk the floor out at the station at night whenever it is lightning. I have a shortage of breath. When I try to go to kick that engine out there, if it don't go the first time, I am just all out of breath, and I have to sit down to rest before I can kick it again. I feel that way now. I can't wear a dress shoe at all, and I have to wear a shoe a size too big for me. I wear common thin leather sole shoes. Whenever there is an electrical disturbance or a thunder shower my feet burn worse than at any other time. I never was bothered with my feet sweating before, but now I can put on a clean pair of socks, and in an hour I can wring water out of them. My left knee aches right in under the kneecap all the time, and if I step on something and turn it the least bit, I can hardly walk for forty or fifty yards until it gets over it. There is tenderness to the touch on my knee just under the cap. I favor my knee all the time, and limp.

"At the time I was hurt I was working in the pipe-line department, and was helping Johnny Berger build a kitchen on a house belonging to the company. . . . I was doing ordinary common labor, helping carpenters, concrete work, anything that came up in the pipe-line department, including digging ditches. I can't do that kind of work at this time on account of my feet and knee and the shortness of breath. I can't go out and do a day's work like I did before. . . . I can't use my foot and leg like I did be-

fore. . . . I just have to carry that left leg along. I can't use it in any active work."

Physicians of undisputed qualifications who had treated the claimant and who had examined the claimant testified there are no discoverable physical causes for the claimed burning and sweating of feet, pain under the kneecap, shortness of breath, or other physical disability. The physicians testified there was no evidence of change of nerve structure in either central or peripheral nervous system, or other pathological indication. Claimant's lung expansion was good, his heart was in proper position, his heart action before and after testing exercise was normal, his blood pressure was normal, and no muscular defect was discoverable.

On the foregoing testimony the commissioner of compensation, who saw the claimant and the physicians and heard them testify, found against the claimant. On the transcript of the proceeding before the commissioner, the district court found in favor of claimant. The question whether claimant was suffering disability as a result of the accident was a question of fact. Both the commissioner and the district court had jurisdiction to determine the question. This court has no such jurisdiction. Its jurisdiction is limited to determination of matters of law only. The principal law question has been indicated: Was there substantial evidence to sustain a finding a disability? The answer is obvious.

The district court found the loss of use of claimant's left leg and foot was permanent. The commissioner of compensation heard the claim on July 10, 1929, a year after the accident, lacking two days. On November 27, 1928, less than a month before claimant returned to work, the physician who had been in charge of the case made a report of a physical examination of the claimant. The report follows:

"Examination: On November 26, 1928, date of examination, the patient shows very much improvement in his condition since the previous examination. The left knee does not pain him so much, and the swelling is almost absent, but he still complains of tenderness under the kneecap. His feet are still tender, but they cease to swell, and he is doing quite a bit of walking. The tenderness has also greatly improved since the last examination.

"Prognosis: This case is improved very much in the last few weeks, as the applicant shows evidence from the present symptoms that he will have a total recovery, but in my opinion it will be well to give him ample time, as the joint conditions following a severe electric shock are very prone to recur, and I have instructed the patient to continue light exercise for one

month, and if unable to resume his former work then to return to this office for further observation."

On December 29, 1928, after claimant had returned to work, the physician made another report, which contained the following:

"Prognosis: This case from a physical examination looks very good, but from a history and past experiences of joint condition in severe electric shock, would have to be guarded, as I know of no treatment other than heat which benefits the condition any, and they are prone to become of a chronic nature."

If the claimant's testimony relating to his condition at the time of the hearing be accepted the physician's predicted likelihood of recurrence of disabling conditions had proved true, and the conditions had apparently become chronic.

As indicated, compensation was allowed for permanent partial loss of use of claimant's left leg, including the foot. Nothing was allowed because claimant suffers discomfort or pain or nervousness caused by lightning. (See *Welden v. Edgar Zinc Co.*, 129 Kan. 422, 422 Pac. 618.) No complaint is made of the finding of percentage of loss of use or of method of computing compensation.

The judgment of the district court is affirmed.