No. 29,851.

Pete Dinoni, *Appellant,* v. The Vulcan Coal Company and T. H. Mastin and Company, *Appellees.*

(297 Pac. 721.)

Opinion filed April 11, 1931.

*Sylvan Bruner, Walter J. True* and *Walter T. Davis,* all of Pittsburg, for the appellant.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This appeal was by an injured miner in a workmen's compensation case from award rendered in his favor by the district court for temporary total disability for six weeks, claiming that upon the findings of the court and the uncontradicted evidence the award should have been for permanent partial disability and compensation accordingly.

The workman while pushing a car in the mine of the appellee

slipped and fell, on February 14, 1929, striking his right knee upon a sharp rock, bruising and injuring the knee and leg whereby it became infected. On April 6, 1929, while walking from his bed with a cane at his home he slipped and fell, striking his right knee against a rocking chair, fracturing the knee cap, which was followed by an operation in which the fractured parts were wired together, and this was followed by protracted and serious infection.

A claim for compensation was made March 18, 1929, and award denied July 26, 1929, by the compensation commissioner after the taking and hearing of evidence by an examiner.

The district court, upon examination of the evidence, found that the plaintiff on February 14, 1929, received an accidental injury arising out of and in the course of his employment and as a result of such injury he was temporarily totally disabled, which continued for six weeks from and after February 21, 1929, and then found the rate of compensation and made a lump-sum award.

Counsel for the appellant fully and frankly recognize the limitation fixed by chapter 206 of the Laws of 1929 to questions of law in compensation cases on appeal to this court, but urge and forcibly contend—

". . . that the record and the findings of the court plainly establish the fact that the present condition of the appellant is due to the injury of February 14, 1929, and that the condition arising out of said injury, and brought about by the fall of April 6, 1929, did not break the chain of causation, or constitute such a separate and distinct cause as would as a matter of law preclude appellant's claim for compensation for the full extent of his disability."

They further maintain "It is uncontradicted that the fall on April 6, 1929, was primarily caused by the weakened condition of the appellant's knee and leg as a result of the injury of February 14, 1929 . . ." and that the following opinion of appellant's physician is undisputed:

"I believe that the infection developed from the condition that the leg was in from the first injury he suffered in February, 1929."

The reasoning of the appellant presents and suggests two distinct lines in the chain of causation—the weakened condition of the knee, which directly contributed to or caused the fall on April 6, and that the serious infection after the operation on the knee cap developed from the infection in the leg from the first injury. In other words, the fall and breaking of the knee cap on April 6 was caused by the weakened condition of the knee from the first injury, or the serious

infection following the operation made necessary by the second fall was developed from the infection incident to the first injury. While the second fall and the second infection are distinct in the chain of causation, yet it is also reasonable to think of them as conjunctive and operating together.

Appellant relies strongly upon two recent Kansas cases: one where serious results from milk leg followed a necessary operation on account of an accidental injury, and the other where the uselessness of an arm by prolonged disuse followed an accidental burning, and the court held in the first case that the original injury was the contributing if not the direct cause of the workman's present condition, and in the second case that it was immaterial as to whether the uselessness of the arm was primarily caused by the burning or secondarily by prolonged disuse.

"In this case there is no claim that the 'milk leg' was caused by improper surgical treatment or malpractice. The injury itself is the basis of complaint. While a reasonable conclusion from the evidence was that the lifting of the heavy barrel caused the hernia, that the hernia necessitated the operation, as a result of which one of the veins of plaintiff's leg was dammed or the flow of blood materially restricted, there was evidence 'that the milk leg could be caused by an injury.' In either case the original injury was the contributing cause, if not the direct cause of plaintiff's condition. From the 600-pound barrel through the various stages to the 'milk leg,' each step was the natural inducement of the next. The result was plaintiff's condition, from which he will be partially incapacitated, perhaps for life." (*Bidnick v. Armour & Co.*, 113 Kan. 277, 279, 214 Pac. 808.)

"Touching its alleged uncertainty, it is immaterial whether the uselessness of the arm was primarily caused by the burning or secondarily by prolonged disuse occasioned by unbearable pain which was a consequence of the burning." (*Edgar Zinc Co. v. Hamer,* 130 Kan. 58, 62, 285 Pac. 550.)

It will be observed that there was no independent intervening incident in either of those cases. In the former case it was urged that the milk leg was entirely caused by the operation for hernia and that the workman had completely recovered from the hernia, but the operation was a proper sequence of the accident, and the intervening operation was necessary on account of the injury and not because of any subsequent incident or occurrence. In the second case, the disuse was gradual and constant and the facts and proposition therein involved are extremely different from those in the instant case.

The rule as to independent intervening causes or agencies is well expressed in the case of *Ruth v. Witherspoon-Englar Co.*, 98 Kan.

179, 157 Pac. 403, although the intervening agency there was mal-practice or unskillful treatment, which is not exactly akin to the intervening incidents in the case at bar. It was there said in the opinion, on page 181:

"The plaintiff was entitled to recover compensation based only upon such disability, total or partial, as resulted from the injury received in the course of his work, without the intervention of an independent agency. The matter is not confused by the need of determining what results might have been anticipated, or by any refined distinctions between proximate and remote causes, for whether and to what extent disability in such a case as the present has been increased by want of proper surgical care admits of ascertainment with reasonable definiteness and certainty. If it should be proved here, for instance, that the whole effects of the plaintiff's injury would under proper treatment have disappeared within a year, that would obviously be the limit of the period for which he could recover compensation in this action. His judgment here could not be increased by the fact that through the incompetent or negligent handling of the case by physicians a disability which would otherwise have been merely temporary was rendered permanent. (*Della Rocca v. Stanley Jones & Co.,* [1914] W. C. & Ins. Rep. 33, annotated in 6 N. C. C. A. 624.) Even if circumstances had been shown sufficient to charge the defendant with responsibility for the fault of the physicians, the rule would not be altered, for liability under the compensation act cannot be made to depend upon the degree of care exercised."

On the preceding page of the opinion it was stated:

". . . the evidence shows that the permanent character of his incapacity is actually the result, not of the injury received while working for the defendant, but of improper surgical treatment." (p. 180.)

In the case at bar the evidence is conflicting as to whether the permanent character of the incapacity is the actual result of the original injury or of the fall on April 6. Appellant insists it was the result of the original injury and has the evidence of the injured workman to sustain that view where he says the fall on April 6 was on account of the condition of his leg, which was painful, sore and weak. On the other hand, the physician said the last time he saw the patient the last part of March he had practically recovered, that the remaining condition of infection was not cleared out entirely, the knee looked to be swollen some but was doing very well. Can it, in the face of this evidence, be said it is uncontradicted that the fall on April 6 was primarily caused by the weakened condition of the workman's knee and leg? To have "practically recovered" is certainly a partial contradiction at least of the painful, sore and weakened condition as related by appellant. We think the evidence is

conflicting and at least in a measure contradictory, and sufficiently so to justify the triers of facts in the case to have determined this issue either way.

Was the infection following the operation on the knee cap developed from the previous infected condition of the leg? The physician said he believed it was. This is not met by any contradictory statement of opinion of a physician or anyone else, but in order for this to be the causal connection between the original injury and the present serious condition it must have been so naturally, without any independent intervening incident or the result of a necessary course on account of the original injury, as the milk leg was the result of the necessary operation for hernia in the Bidnick case, *supra*. The fact of the second fall, the fractured knee cap, the difficult operation in wiring the broken parts together, and the great danger of resulting infection, all in effect contradict and raise an issue as to whether the infection developed from the infected condition of the leg from the first injury. We think both of these propositions urged by the appellant as undisputed are contradicted by statements or facts which make them both issues to be determined by the district court or judge, and not subject to review here except to determine if there were sufficient facts to support the finding of the trial court. (*Coe v. Koontz,* 129 Kan. 581, 283 Pac. 487; *Williams v. Wilson,* 129 Kan. 215, 282 Pac. 574; *Corpora v. Kansas City Public Service Co.,* 129 Kan. 690, 284 Pac. 818; and *Anderson v. National Refining Co.,* 130 Kan. 638, 287 Pac. 240.) There was ample evidence to support the finding of the district judge if given credence by him, that the fall on April 6 was an independent intervening agency which broke the chain of causation so that the present unfortunate condition cannot be attributed to the accidental injury arising out of and in the course of the employment of the workman on February 14.

"Whether a subsequent incident or accident is the proximate cause of a further disability, following it, or an independent intervening cause, is a question of fact for the industrial accident commission, whose conclusion must be sustained by the courts, whenever there is any evidence in the record to sustain such conclusion on any reasonable theory." (*Head Drilling Co. v. Industrial Acc. Com.,* 177 Cal. 194, syl. ¶ 2.)

We have reached this conclusion having fully in mind the suggestions made by the appellant that a liberal construction is proper in such matters where there exists an ambiguity or uncertainty,

and that this case does not involve any element of negligence on the part of the workman in receiving the second injury, no negligence having been plead or asserted by the appellee.

Cases are cited by appellant from other jurisdictions in support of his contention. Among them the case of *Georgia Casualty Co. v. Indus. Acc. Com.*, 87 Cal. App. 333, where the death of the workman was caused by the administration of a general anæsthetic in making an incision in the thumb where a tendon was severed in an accident. The anæsthetic was necessary to the operation, but was fatal as discovered by a post-mortem examination because of the presence of certain glands which are usual only in children, and it was held the administration of the anæsthetic was not an independent cause of death.

In both *Sponatski's Case*, 220 Mass. 526, and *Gasperin v. Consolidated Coal Co.*, 293 Pa. 589, the injured workmen, while in the hospitals undergoing treatment for their accidental injuries, became temporarily insane and committed suicide. In each case it was held there was no independent intervening cause.

The same conclusion was reached in the *Burns's Case*, 218 Mass. 8, where the injured workman while confined to his bed on account of the injury developed a bed sore which became infected, causing blood poisoning from which death resulted, the court holding the bed sore and blood poisoning were natural and probable connections between the injury and its consequences.

In the case of *Postal Telegraph-Cable Company v. Hulsey*, 132 Ala. 444, where one with a broken leg confined to bed was troubled with nausea and in turning on his bed to keep from vomiting rebroke the leg at the same place, it was held to be a natural result and one liable to happen from the first breaking.

In the case of *Newcomb v. Albertson*, 85 N. J. L. 435, the workman sustained a broken arm which entirely healed, but while he was in the hospital there developed an abscess on the thumb making it permanently useless. The latter was held to have arisen out of the injury.

It will be observed in all of the six preceding cases that nothing like an independent agency intervened. Most of the subsequent incidents were natural sequences and closely connected with the existing trouble. None were new or independent instances after substantial recovery.

Another matter to be observed as to each and all of them was

that the results approved were in harmony with the findings reached by the triers of facts. In none of these cases were the findings of fact disturbed in the review.

Some other cases were cited where the facts were more nearly like those in the instant case, but they were not compensation cases, and a different rule as to liability exists in compensation cases than in ordinary actions for damages on account of negligence and actions under the federal employer's liability act. (*McRoberts v. Zinc Co.*, 93 Kan. 364, 368, 144 Pac. 247.) Some other cases cited seemed to turn on the question of negligence of one or the other of the parties.

We find no error in the finding and award of the district judge, and the same should be affirmed.

It is so ordered.

SLOAN, J., not participating.