**DOUGLAS AIRCRAFT COMPANY, Inc., and** Employers Mutual Liability Insurance Company of Wisconsin, Petitioners,

v.

**Roy K. HARTWIG and State Industrial Commission, Respondents.**

No. 37403.

Supreme Court of Oklahoma.

Oct. 23, 1956.

Sanders & McElroy, Tulsa, and Dale F. Whitten, Tulsa, of counsel, for petitioners.

A. D. Mason, James Wm. Brown, Tulsa, Arthur Meyer, Nowata, Mac Q. Williamson, Atty. Gen., for respondents.

CARLILE, Justice.

On January 9, 1956 Roy K. Hartwig, referred to as respondent herein, filed a claim for compensation against Douglas Aircraft Company, Inc., and its insurance carrier, petitioners herein, in which he states that on December 15, 1955, while in the employ of petitioner, Douglas Aircraft Company, he sustained an accidental injury consisting of an injury to his left eye, resulting in double vision. The injury was caused when a particle of steel from a punch lodged in his eye, resulting in double vision.

The trial commissioner to whom the case was assigned, at the close of the evidence, in substance, found that on December 15, 1955, respondent, while in the employ of petitioner, Douglas Aircraft Company, sustained an accidental injury consisting of an injury to his left eye, resulting in double vision; that as a result of said accidental injury he sustained a 10 per cent permanent partial disability to his body as a whole, for which disability he is entitled to compensation for 50 weeks at $28 per week, or the total sum of $1,400 and upon such finding entered an award in favor of respondent accordingly, which was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review this award and contend that it is not sustained by the evidence and is contrary to law.

It is stipulated that respondent, while in the employ of petitioner and engaged in the course of his employment, sustained an accidental injury consisting of an injury to

his left eye; that the injury was caused when a piece of steel lodged in his eye, and that he was then engaged in a hazardous employment; that he was paid temporary total compensation for two weeks, when temporary total disability ended.

Respondent in his own behalf testified in substance as follows: Immediately after he sustained his injury he notified his employer thereof and was sent to a doctor, who thereafter operated and removed a small particle of steel from his eye; that his right eye was not injured by the accident. After the operation he developed double vision. He sees two objects when looking at one, and such condition still exists.

The medical evidence consists of the reports and supplemental reports of three different physicians. Dr. S, in his original report, states that he first saw and examined respondent on the 2nd day of March, 1956; that he obtained a case history from him which is substantially as above stated. His examination disclosed that respondent's vision without glasses is 20/30 minus 2 in each eye, when properly fitted with glasses his vision is 20/20 in the right eye and 20/25 in the left eye. The muscles of each were then checked and such check showed that there is a three and a half degree of right hyperphoria, which means that the two eyes do not function on the same level and muscles which bring them to the same level have either been injured or contracted in some way during the procedure, which gives respondent double vision. The doctor further testified:

"* * * This kind of double vision where the two eyes are accustomed to working together and then are suddenly thrown out of function, leaves a person to the place where they can only do a very rough kind of work. They cannot judge distance, cannot be around moving machinery, they cannot drive an automobile very long at a time and these people suffer a very high fatigue and fatigue to the body as a whole due to the nervous effort of trying to overcome the double vision

and the pulling of objects they try to focus upon. In other words their entire visual balance is gone. With this much imbalance and the probability this will increase completely, the left eye is thrown out of focus almost entirely.

"It is my opinion this man has anywhere from 25 to 35 percent loss or disability to the body as a whole. Or the two eyes without glasses have about 25% loss of vision. This condition could be remedied but he did not have it before the accident and it is all due to the injury he received."

The doctor, in his supplemental report, explains in detail what is meant by hyperphoria as follows:

"By hyperphoria is mean an imbalance to the eye balls, one has a tendency to look up and one has a tendency to look down, due to the injured muscle which holds them in balance. This creates double vision and a constant effort to maintain balance, when attempting to focus. In other words, the two muscles work in balance; when one is injured they are both imbalanced because we use both to see. Now, if you covered one there would be no imbalance, but in using both the imbalance is there. This is not a sympathetic condition as we ordinarily term sympathetic ophthalmia."

The other doctors filing reports in the case agreed with Dr. S that respondent, as a result of the injury to his left eye, has double vision and agreed with him in the main as to what causes double vision. They, however, state that respondent's double vision is not permanent but is merely temporary; that it has clearly decreased since he sustained his injury and in a short time will entirely disappear; that the only permanent disability sustained by respondent as a result of his injury consists of 10 per cent permanent loss of sight of his left eye. This, in substance, constitutes the evidence upon which the award was entered.

Petitioners contend that the evidence clearly shows that the only injury sustained

by respondent consisted of an injury to his left eye; that his right eye was not injured; that the award, therefore, should have been based on a percentage of loss of vision of his left eye alone, as provided by schedule, 85 O.S.1951 § 22, subd. 3, and that the Commission was without authority to enter an award on the basis of a percentage of disability to the body as a whole.

We think there is merit in this contention. The evidence established that the only injury sustained by respondent was the injury to his left eye resulting in double vision. His right eye was in no manner involved. That if his left eye were covered he would have normal use of his right eye. The evidence also shows that there was no sympathetic involvement of the right eye because of the injury to the left eye. If, therefore, respondent's double vision caused by the injury to his left eye is permanent, as found by the Commission and indicated by Dr. S in his report, the award should have been for total loss of use of respondent's left eye or 100 weeks, as provided by 85 O.S.1951 § 22, subd. 3, rather then 50 weeks, based upon a percentage of permanent partial disability to his body as a whole, as ordered by the Commission. See, in this connection, Stefan v. Red Star Mill & Elevator Co., 106 Kan. 369, 187 P. 861, 862. In that case it appears that an employee, while engaged in the course of his employment, sustained an injury to his eye resulting in double vision. The other eye was not affected. It further appears, under the evidence detailed in that case, that if the injured eye were covered there would be normal vision in the uninjured eye. The employee was awarded compensation for total loss of use of the injured eye. The award was affirmed by the Kansas Court on appeal. The court there said:

"* * * The evidence was that the injury to the eye did not destroy the vision. If the uninjured eye were lost the plaintiff could see, for a time and to a limited extent, with the injured eye. The injury, however, was such as to distort and constrain the angle of vision. Use of both eyes causes double vision, and in order that the plaintiff may see it is necessary that the injured eye be kept covered. There is no remedy for the condition, and the court holds the plaintiff has suffered permanent loss of use of an eye, within the meaning of paragraph 22 of subdivision (c)."

See, also, Lindhout v. Brochu & Haas, 255 Mich. 234, 238 N.W. 231.

Under the evidence the commission was without authority under the statute to enter an award based upon a percentage of disability to the body as a whole.

Petitioners, however, contend that respondent failed to establish that his condition, double vision, is permanent and that since in the medical reports offered by them the doctors state that the respondent's double vision is not permanent, but temporary only, and in a short time will entirely disappear and that the only permanent disability sustained by respondent consists of a 10 per cent permanent partial loss of sight of his left eye, the award should have been based on percentage of disability to his left eye rather than on disability to the body as a whole.

Respondent relies on the report of Dr. S to sustain his contention that his double vision is permanent. Petitioners contend that the doctor did not so testify. While it is true that he did not in exact words so testify the Commission, however, evidently thought that taking his testimony as a whole it was sufficient to justify such finding. Since, however, this case must be remanded for further hearing we deem it unnecessary to definitely determine that question in this proceeding. If, at that hearing, it should develop that respondent's double vision is not permanent but temporary only and the only disability sustained by respondent was a permanent partial loss of sight of his left eye, as contended by petitioners, then respondent should be awarded compensation accordingly.

We conclude that the award of the Commission based upon a percentage of perma-

nent partial disability to the body as a whole is contrary to law and cannot be sustained.

Award vacated for further proceedings in accordance with the views herein expressed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.