No. 29,848.

FRANK SCHWEIGER, *Appellee*, v. THE SHERIDAN COAL COMPANY, *Appellant.*

(297 Pac. 688.) ·

Opinion filed April 11, 1931.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson*, all of Pittsburg, for the appellant.

*Sylvan Bruner*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment on an award of compensation to appellee for loss of sight in his left eye, which was alleged to be a belated result of an injury to his right eye sustained while at work as a coal miner on December 23, 1927.

On that date, while appellee was digging a "horseback" in appellant's coal mine, a piece of rock struck him in the right eye and injured it. The accident caused him to quit his employment and go to a doctor, who treated his eye for about two months, until February 17, 1928, when he was discharged by this doctor as able to return to work. He did not resume his employment, however, because "his eye was still bothering him." On February 10, 1928, he made a claim for compensation, based upon 60 per cent of his average weekly earnings, which had been $25 to $30. In compliance therewith appellant paid him $1,442.06 as compensation

at the rate of $15 per week, for about 96 weeks, and until December 10, 1929, at which time payments ceased.

On February 4, 1930, appellee filed with the commissioner of workmen's compensation a claim for compensation for an affliction of the left eye traceable to the accident to his right eye which had occurred some two years previously. In his application he stated that the accident which had caused corneal ulcer and loss of vision in his right eye "now affects left eye, loss of vision."

At the hearing before the examiner appellee testified that his left eye had begun to hurt him about two months after his doctor discharged him in February, 1928.

"Wasn't very long after February 17, [1928] left eye began bothering me.
. . .

"Q. How long was it after you quit going to Dr. Gibson that your left eye began hurting you? A. About two months, I guess; I don't know exactly.

"Q. Then that would be about April 17, 1928—about April 17, 1928; is that right? A. Yes.
. . . . . . . . . . .

"Q. That was the first time it ever bothered you? A. Yes.

"Q. Now, did you go back to Doctor Gibson then for treatment when your left eye began to bother you? A. No, I didn't.

"Q. You didn't go to any doctor then for a long time? A. No, I wasn't going.
. . . . . . . . . . . .

"Q. Doctor Gibson is the first doctor that you went to after your left eye began to bother you; is that right? A. Yes. . . . I went back to Doctor Gibson December 14, 1929. December 14, 1929, was the first time I went to Doctor Gibson after he quit treating me in February, 1928. During that time I hadn't been to any doctor. . . .

"Q. Now, you never had this left eye hurt when you got the right eye hurt; wasn't anything got in the left eye? A. No.

"Q. And Doctor Gibson didn't treat your left eye the first time he treated you, did he? A. No, he didn't."

The compensation commissioner made an award for the total permanent loss of the use of the right eye, and for a total temporary loss of the use of the left eye for nineteen weeks and four days and for a permanent partial loss of use of the left eye for eighty-nine weeks and three days, and on that basis, by some undisclosed process of computation, a total award was allowed in the sum of $2,949.56 less credit for the aggregate weekly payments appellee had already received.

From this award both the claimant and his employer appealed to the district court, which made certain findings and conclusions, in part, as follows:

"1st. That on December 23, 1927, the plaintiff was in the employ of the defendant as a coal miner, and on said date while in the regular course of his employment he received an accidental injury to his right eye and as a result thereof lost the sight of said right eye.

"2d. That as a result of the injury to plaintiff's right eye the plaintiff suffered, and at the time of this hearing was suffering, total loss of the use of the left eye, which disability will continue for an indefinite period in the future.

. . . . . . . . . . . . . . . .

"4th. That plaintiff should be awarded the sum of $18 per week as compensation for schedule injury to the right eye for a period of 110 weeks from and after the 30th day of December, 1927.

"5th. That for temporary total loss of the use of the left eye plaintiff should be awarded the sum of $18 per week as compensation for an indefinite period of time, beginning at the expiration of the 110 weeks' compensation allowed for the loss of the right eye."

Judgment was entered accordingly and defendant appeals, contending that it was error to award appellee any compensation in addition to what is provided in the statutory schedule, to wit:

"For the loss of an eye, or the complete loss of the sight thereof, 60 per cent of the average weekly wages during 110 weeks." (R. S. Supp. 1930, 44-510, [3] [c] [15].)

That contention, however, overlooks the fact that the workman was incapacitated on account of the injury to his eye until he was discharged by the doctor as fit to return to work on February 17, 1928. Under such circumstances, by the amendment to the compensation act adopted in 1927, the workman was entitled to compensation for that period of disability following his accident in addition to the scheduled allowance for the loss of the use of his right eye. (R. S. Supp. 1930, 44-510, [3] [c] [21].) That healing period from December 23, 1927, until February 17, 1928, was eight weeks. The workman was therefore entitled to 60 per cent of his average weekly wages for the eight weeks. It is agreed that this compensation should be $18 per week. He was therefore entitled to eight times $18, or $144, for temporary incapacity until the time he was discharged as fit to return to work. It is perfectly clear to this court that he is also entitled to the scheduled compensation for the loss of the use of the right eye which he sustained by injury received in his employer's service. The scheduled compensation therefor is 110 weeks at $18 per week, which amounts to $1,980, and to this should be added the sum of $144 computed as above. Combining these awards, we have $1,980 plus $144, which

makes a total of $2,124. Of that sum the appellee has already received $1,442.06, which leaves a balance due him of $681.94.

To what further sum is the workman entitled? This court finds it impossible to follow the computations of either the compensation commissioner or the district court; but while we readily acquiesce in the trial court's findings of fact we have our own responsibility to discharge in so far as the propriety of the judgment is governed by questions of law.

It is clear that appellee received no injury to his left eye; he made no claim for an injury to that eye; not until two months after his discharge by the doctor for the injury to his right eye did his left eye "begin to bother him." Not until February 4, 1930, which was two years, one month and seven days after the accident and injury to his right eye, did he make demand or file a claim for an injury to his left eye. Not for about twenty-one months after his left eye commenced to "bother" him did he make any claim for injury to his left eye. The statute expressly says that proceedings for compensation shall not be maintainable unless a claim for compensation has been made within three months after the accident. (R. S. 44-520; *Long v. Watts,* 129 Kan. 489, 283 Pac. 654.) It is true, of course, as was noted in *Murphy v. Cook Construction Co.,* 130 Kan. 200, 285 Pac. 604, that where a claim for compensation has been timely made and an award made thereon, such award may afterwards be raised or lowered before final payment is made, if subsequent developments should justify it. The statute makes provision for that possibility (R. S. 44-528), and this court would not hesitate to make it apply to a situation where compensation was being paid without the formality of an award having been made by the compensation commissioner. But it seems clear that not even the most liberal construction of the compensation act could extend the statutory provision for increasing an award to meet the case at bar. If the appellee had been allowed an award for the injury to his right eye, and it had later developed that such injury was more serious than contemplated when the award was made, most assuredly the workman would have had a right to return to the compensation commission with a timely application to modify the original award, based upon the demonstrated fact that it was insufficient to compensate him for the injury he had sustained. No such case is presented here. It takes no expert in the physiology

of the eye to understand that by sympathy an injury to one eye may affect the other eye. It may likewise affect the nervous system and cause other aches and ailments. The legislature must be presumed to have known such elementary facts of science; but for the loss of an eye or the loss of the use of an eye, it prescribed a scheduled amount, and the statutory schedule is all that can be awarded to the appellee as a matter of law. The statute positively declares:

"Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation, except [medical and surgical services, supplies, etc., not here pertinent] and no additional compensation shall be allowable or payable for either temporary or permanent disability: *Provided, however,* That the commission, arbitrator or committee may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten (10) per cent of the total period allowed for the schedule injury in question, nor in any event for longer than fifteen (15) weeks: *Provided further,* That the return of the workman to his usual occupation shall terminate the healing period." (R. S. Supp. 1930, 44-510, [3] [c] [21].)

Commenting on this provision of the recently amended statute, in *Neuhaus v. Hope Engineering Co.,* 132 Kan. 72, 75, 294 Pac. 655, this court said that its manifest purpose was to stop the pyramiding of compensation under this court's interpretation of the old law.

It therefore must be held that the judgment of the district court cannot be sustained *in toto,* and the cause is remanded to that court with instructions to modify its judgment and to award to appellee the sum of $681.94, and when that is done the judgment will be affirmed.

SLOAN, J., not participating.