No. 37,443

WILLIAM W. RIGGAN, Claimant, *Appellee*, v. THE COLEMAN COMPANY, INC., Respondent, and TRAVELERS INSURANCE COMPANY, Insurance Carrier, *Appellants*.

(200 P. 2d 271)

Opinion filed November 30, 1948.

*Wayne Coulson*, of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky* and *Donald R. Newkirk*, all of Wichita, were with him on the briefs for the appellants.

*Paul J. Donaldson*, of Wichita, argued the cause, and *John E. Boyer* and *George J. Hondros*, both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is a workmen's compensation proceeding wherein it was conceded plaintiff suffered injury as the result of an accident arising out of and in the course of his employment.

After a hearing the commissioner rendered an award and judgment of 119 compensable weeks for temporary total disability and in addition 210 weeks for total loss of use of claimant's right arm with compensation at the rate of $18 per week with certain deductions for compensation already paid. Upon appeal to the district court the findings and award of the commissioner were approved and judgment was rendered for claimant in conformance therewith in the

sum of $4,104, the amount due for 329 weeks at $18 per week after deducting payments of $1,818 theretofore made. The employer and its insurance carrier appeal.

Before proceeding further it will simplify the issues to state the respondents' concede liability under the statute (G. S. 1947 Supp. 44-510 [3] [c] [11] and 44-510 [3] [c] [19]) for permanent loss of the use of a hand at $18 per week for 150 weeks and the claimant admits prior voluntary payments of compensation in the amount deducted by the district court from its total award.

It can also be said the circumstances under which claimant was injured are not in controversy. While operating a heavy stamping machine as an employee of the appellant employer such machine tripped unexpectedly with the result his right hand was caught therein and severely crushed.

One ground urged by appellants for reversal of the judgment is failure of the evidence to sustain the trial court's finding of permanent loss of the use of appellee's right arm. On this point nothing is to be gained by a detailed statement of the facts. It will suffice to say we have carefully reviewed the record, even going to the extent of procuring the transcript of testimony taken at the hearing before the commissioner, and are convinced that under the statutory rule (G. S. 1935, 44-556) limiting our jurisdiction on appellate review of compensation cases and our decisions (e. g., *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 129 P. 2d 846, and *Conner v. M. & M. Packing Co.*, 166 Kan. 98, 199 P. 2d 458) construing its force and effect, we cannot say as a matter of law there was not substantial competent evidence to sustain such finding.

The next and final contention advanced by appellants presents a far more difficult and serious question.

Under the evidence there can be no doubt that following the accident appellee's physical condition was such that he could not perform work for the period of time for which he was allowed temporary total disability by the trial court. Appellants' point is that notwithstanding the incapacity it was not compensable as temporary total disability under the act. Such contention requires an examination of the evidence, the statute and our decisions.

Heretofore we have indicated the record sustains a finding of permanent loss of the use of appellee's right arm which, by statutory provision (G. S. 1947 Supp. 44-510 [3] [c] [19]), is equivalent to its loss. Since appellee's further disability is conceded we are not

interested in its extent but in its cause. The only evidence on that subject is to be found in the testimony of appellee's own medical expert, Doctor Kiser. Summarized, this testimony was that the extreme pain in appellee's shoulder, neck and head, resulting in his severe headaches and additional incapacity, was referred there from the injured member of his body and caused by a condition known as causalgia which is a very common accompaniment of severe injury where there is either nerve or blood vessel injury to an extremity.

At this point it should be repeated the foregoing testimony stands alone and added that nowhere in the record is there any evidence to the effect that either appellee's shoulder, neck or head were directly injured or affected by the stamping machine responsible for the accident or that the referred pain causing his additional temporary total disability was distinct and apart from the disability for which he was awarded compensation as a scheduled injury.

Appellee insists that under the foregoing conditions and circumstances he is entitled to what in effect amounts to a double award, namely, compensation for the loss of his arm and for an additional 119 weeks for temporary total disability. Let us see.

Prior to 1927 the compensation act R. S. 44-510 (3) (c) (21) simply provided that compensation for listed specific injuries should be in lieu of all other compensation except the benefits provided in paragraph 1 of the section and up to that time it must be conceded there is much in our decisions (see *Lane v. Sonken-Galamba Corporation,* 119 Kan. 256, 237 Pac. 875, and cases there cited) to support appellee's position. However, we are not concerned with what was said and held in the cases just cited pertaining to extent of recovery in compensation proceedings for the reason the law as it then existed no longer prevails.

The 1927 legislature enacted a new workmen's compensation act (Laws 1927, ch. 232) definitely indicating its intention by expressly providing that in a case where a workman suffered a scheduled injury no additional compensation should be allowable or payable for either temporary or permanent disability. Section 10 (3) (c) (21) of such chapter, now G. S. 1947 Supp. 44-510 (3) (c) (21), in force and effect on the date of the involved injury, reads:

"Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section *and no additional compensation shall be allowable or payable for either temporary or*

*permanent disability: Provided, however, That the commission, arbitrator or committee may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten percent of the total period allowed for the schedule injury in question nor in any event for longer than fifteen weeks: Provided further, That the return of the workman to his usual occupation shall terminate the healing period."* (Emphasis supplied.)

All emphasized portions of the section just quoted have reference to new and additional provisions not heretofore included in the act.

How must we construe the language of the section just quoted? Our duty in that respect and the remedy for statutory enactments requiring a construction inconsistent with the wishes and desires of those affected by them or contrary to our sympathies under the exigencies of a particular situation were well defined by former Chief Justice Johnston in the opinion in *Anderson v. Oil Refining Co.,* 111 Kan. 314, 206 Pac. 900, later quoted with approval by this court in *Rogers v. Board of Public Utilities,* 158 Kan. 693, 149 P. 2d 632, when he said:

"It was competent for the legislature to make classifications of disabilities and prescribe the rule to be applied in measuring the compensation for each class. The legislature prescribed a measure for certain scheduled disabilities, and a different rule for partial disabilities not scheduled. The fact that the application of these rules may seem to some to operate unjustly, requires a close scrutiny of the act to ascertain the legislative intent, but affords no ground for the court to substitute rules different from those enacted by the legislature. If the practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but this is a function which belongs alone to that body." (p. 701.)

Faced by an undisputed situation such as we have heretofore described and an express legislative fiat directing that no additional compensation shall be allowable for either temporary or permanent disability where a workman is entitled to compensation for a scheduled injury we believe there can be but one answer. That is that the trial court, having found the appellee had suffered the loss of the use of an arm, did not have power to allow appellee additional compensation for temporary incapacity in excess of the fifteen-weeks healing period authorized by the statute and to which we hold he was entitled under the uncontroverted evidence. This is not a case where, as in decisions relied on by appellee in support of its position (*i. e., Fernandez v. Edgar Zinc Co.,* 138 Kan. 735, 27 P. 2d 239; *Morris v. Garden City Co.,* 144 Kan. 790, 62 P. 2d 920) the accident in question caused two separate and distinct injuries each of which resulted in disability but is one where the real source

or cause of his inability to work during the entire period of time for which he was awarded compensation for temporary total disability was the referral of pain from his injured arm to his shoulder, neck and head. Indeed both the factual situation and the result are more like those to be found in *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 297 Pac. 688, where it was held:

"Where a workman in a coal mine sustained an injury to his right eye of such severity that it caused a total loss of its use he was entitled to the scheduled statutory award therefor, and he was likewise entitled to additional compensation for the actual healing period of eight weeks; but he was not entitled to compensation for a sympathetic affliction alleged to have begun in the other eye about two months after his discharge by the doctor, for which he made no demand for compensation for more than two years after the injury to his right eye; nor did such belated demand for compensation constitute an application under the statute to modify or increase the weekly amount of compensation being paid to him for injury to his right eye." (Syl.)

Oddly enough all parties to this appeal rely upon three of our decisions (*Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684; *Amos v. J. E. Trigg Drilling Co.*, 153 Kan. 617, 113 P. 2d 107, and *Rogers v. Board of Public Utilities*, supra) as sustaining their respective contentions. When such decisions are carefully analyzed we do not believe it can be said and we do not agree they sustain appellee's position. If, as he contends, there is any language to be found in the opinions of either of them indicating that under the factual situation here involved, *i. e.*, accident resulting in a scheduled injury followed by additional incapacity which is caused by a causalgia condition directly related to and arising from such injury, there can be recovery of compensation for both scheduled and nonscheduled disabilities it is hereby disapproved as unwarranted under existing provisions of our workmen's compensation act.

From what has been said it follows the district court's additional award of compensation for 119 weeks temporary total disability cannot be sustained. However, we have decided appellee was entitled to additional compensation for an actual healing period of fifteen weeks. When this is added to the 210 weeks of the scheduled award we have a period of 225 weeks for which compensation is warranted instead of 329 weeks as found by the district court. Therefore the judgment must be modified and the cause remanded for final disposition in accordance with the conclusions here announced. It is so ordered.