No. 38,220
No. 38,221

CHARLES M. DUNCAN, Claimant, *Appellee,* v. W. M. DAVIDSON CONSTRUCTION COMPANY, Respondent, and ANCHOR CASUALTY COMPANY, Insurance Carrier, *Appellants.*

(227 P. 2d 95)

Opinion filed January 27, 1951.

*Wm. P. Thompson,* of Wichita, argued the cause, and *A. W. Hershberger, J. B. Patterson, Richard Jones* and *H. E. Jones,* all of Wichita, were with him on the briefs for the appellants.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns* and *Leo R. Wetta,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: The present appeals arise out of a proceeding under the workmen's compensation act.

The record discloses without dispute that on December 11, 1945, the workman Duncan suffered a compound, comminuted fracture between the knee and the ankle of his left leg, in an accident occurring during the construction of a pipe line by his employer, the W. M. Davidson Construction Company; that the company furnished Duncan with hospital and medical treatment after the accident and throughout the year 1946 in an effort to effect a cure but that the bones did not properly unite. On January 14, 1947, a further operation was performed in which a barrel stave graft was made and a

plate put across the fracture site, the bone grafts used being removed from Duncan's right ilium. Casts were placed on Duncan's leg, the last one being removed June 15, 1947. During all of the period of disability payments of compensation, as distinguished from medical treatment, were made to Duncan until August 17, 1948, when such payments ceased. On November 30, 1948, Duncan made a claim for compensation, stating therein: "My left leg was broken and shattered between the ankle and knee while laying a sixteen inch pipe." Thereafter Duncan received further medical attention from the company's doctor, at least as late as December 14, 1949. Under date of September 27, 1949, Duncan made a further claim, stating that the nature and extent of injury was: "Left leg broken in several places below the knee—In surgery six or seven times. Badly crippled in left leg and right hip. Unable to resume pipe-line work." On December 13, 1949, the compensation commissioner heard the claim and on January 30, 1950, found that the claim was filed within the statutory period and that the claimant suffered personal injury by accident resulting in 139 weeks temporary total disability to August 17, 1949, and twenty-five per cent permanent partial disability by reason of the injury to the left foot and the disability resulting from the surgical intervention in the right os ilii, and an award was made for 139 weeks temporary total disability at $18 per week in the sum of $2,502 and twenty-five per cent permanent partial general disability at $18 per week for 276 weeks in the sum of $4,968 making a total of $7,470 of which amount $2,502 had been paid, leaving a balance of $4,968 of which amount $414 was due January 25, 1950, and was ordered paid in one lump sum, leaving a balance of $4,554 which was ordered paid at the rate of $18 per week for 253 weeks thereafter. On January 31, 1950, the respondent company and its insurance carrier served notice of appeal to the district court. On appeal, the district court on August 3, 1950, found that the claim made under date of November 30, 1948, was sufficient and if for any reason might be said to be insufficient the application for hearing under date of September 27, 1949, was still within time, and it affirmed the award, the only change made being as to the amount presently due as of the date of its judgment and the amount thereafter due. From the judgment of the district court, the respondent company and its insurance company appealed to this court, that appeal bearing number 38,220.

On February 27, 1950, the respondent company and its insurance carrier filed with the compensation commissioner their petition for

a review of the award of January 30, 1950, for reasons later noted. The claimant's objections to a hearing of this petition were sustained, and the respondent and the insurance carrier appealed to the district court. In the district court this appeal was heard at the same time as the other appeal to that court. The district court affirmed the ruling of the compensation commissioner and appeal to this court followed, the appeal bearing number 38,221. In this court the appeals are presented together, the specifications of error being that the trial court erred (1) in holding that the written claim for compensation was in time; (2) in adopting the findings of the compensation commissioner as to the extent of claimant's disability when there was no substantial competent evidence to support the findings; (3) in holding any compensation was due; which pertain to No. 38,220; (4) in holding that the compensation commissioner did not have jurisdiction to hear the petition for review and that the district court acquired no jurisdiction on appeal; and (5) in refusing to consider the petition for review on its merits; which pertain to No. 38,221.

Before taking up appellants' contentions of error we note the following: In the statement of facts we noted that the last operation was the barrel stave graft, the bone grafts used being taken from claimant's right ilium. There was evidence by the claimant, disputed by respondent that at the place from which the grafts were removed, there followed an exostosis or growth of bony spurs which projected into the surrounding soft tissues which interfered with the function of the hip muscles as they glided back and forth in flexion and extension of the hip, resulting in a twenty-five per cent disability of the right hip, unless the mass was removed, and that if removed disability would be practically limited to the left leg. By his award the compensation commissioner resolved the disputed facts in favor of the claimant.

In presenting their specifications of errors appellants have filed an extensive brief and in response appellee has filed another. In both may be found discussion of matters predicated on assumptions, which, if not made, need no treatment. All such argument is supported by citation of numerous cases which have been examined, but which are not set forth herein.

Appellants' contention that the claim was not filed in time is not predicated on any contention the claim of November 30, 1948, was not filed within time, but on a contention it was not legally sufficient to support the award made. The contention of

legal insufficiency is somewhat involved, but shortly stated is that under G. S. 1947 Supp. 44-510 (3) (c) clause 19, the total loss of use of the leg constituted a scheduled injury for which payment of compensation is limited to 125 weeks (clause 13), and that as the compensation commissioner found claimant suffered 139 weeks of compensable temporary total disability, there is no remainder left to which partial permanent loss of use may be applied. As to this portion of appellants' argument, we think it a sufficient answer to say there was no claim made of permanent total loss of use of claimant's left leg or that the injury was a scheduled injury. There was no evidence that was the case, and the compensation commissioner in the first instance, and the district court on appeal, made no such finding. Appellants contend further however that although the claim of November 30, 1948, was probably sufficient for any additional compensation due the claimant for disability of the left leg, it was not sufficient as a claim for alleged disability in the region of the right os ilii from which bone was removed in connection with the bone graft at the fracture site on the left leg made January 14, 1947, and reliance is placed on *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 297 Pac. 688, in which the claimant on February 10, 1928, made claim for an award of compensation for loss of sight in his right eye as result of injury sustained December 23, 1927. He received an award for 96 weeks which terminated December 10, 1929. On February 4, 1930, he filed a claim for compensation for an affliction of the left eye traceable to the accident to his right eye. Appellants direct our attention to that portion of the opinion on page 801, commencing:

"It is clear that appellee received no injury to his left eye; he made no claim for an injury to that eye; . . . Not until February 4, 1930, which was two years, one month and seven days after the accident and injury to his right eye, did he make demand or file a claim for an injury to his left eye" etc.

In the above case an award was made for a scheduled injury and paid. The second claim was not made until after final payment of the award, and it was predicated on a claimed disability arising out of the original accident but not caused by it, and was properly held to be too late. We are of the opinion that the above case is not controlling here.

In answer appellee directs attention to G. S. 1935, 44-523, that the commissioner or court shall not be bound by technical rules of procedure; to G. S. 1947 Supp. 44-520a which provides for

a written claim for compensation but does not specify any form nor require that the claim state the particulars of the injuries, and to our decisions in *Eckl v. Sinclair Refining Co.*, 133 Kan. 285, 299 Pac. 588; *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131; and *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, holding that no particular form of claim is required and that it is sufficient if it advises the employer that the injured employee is claiming compensation for an injury sustained. And see the form of claim set forth and considered in *Rubins v. Lozier-Broderick & Gordon*, 160 Kan. 499, 500, 163 P. 2d 364.

In the instant case the respondent employer knew from the date of the accident the original extent of the claimant's injuries, it knew, because it furnished medicine, hospital and surgical treatment, the progress of the claimant's condition and that the operation of January 14, 1947, was made to alleviate the injury. After that date it continued to furnish surgical and medical treatment, and it made payments of compensation as such to August 17, 1948. The written claim of November 20, 1948, was served within 120 days from that date. While possibly there might be cases where the employer might be misled or prejudiced by reason of lack of particulars in a written claim for compensation, this one is not of that type. We are of the opinion that the written claim made under date of November 20, 1948, was sufficient. Whether the injuries from which claimant was suffering at the date of the hearing was compensable is treated later herein.

Without elaboration, we agree with the district court that if the written claim of November 20, 1948, was for any reason insufficient, the one of September 27, 1949, was sufficient. It was served while medical, surgical and hospital treatment was being furnished by the respondent to claimant. Such treatment has been held to constitute payment of compensation. See *Bishop v. Dolese Brothers Co.*, 155 Kan. 288, 124 P. 2d 446, and cases cited. Under the facts of this case we cannot approve appellants' contention that the employer, having expended sums in excess of the statutory requirement, prior to the operation on January 14, 1947, the medical and surgical treatment rendered thereafter is exactly the same as though the claimant had procured such treatment for himself. The case of *La Fever v. Olson Drilling Co.*, 142 Kan. 431, 49 P. 2d 967, cited by appellants does not support their contention.

The appellants next contend there was no substantial evidence

to support the findings of the district court as to the extent of the claimant's disability, stating there was no evidence that claimant suffered twenty-five percent permanent partial disability. This contention is made on the assumption that evidence as to injuries to the right hip caused by the growth of spurs after bone splints were taken to be used in making the barrel stave graft on the left leg, was incompetent. Under repeated decisions of this court, on appeal we are concerned only with questions of law and not of fact and our review is limited only to a determination of whether the findings of the trial court are supported by substantial competent evidence. Assuming that the evidence complained of was competent, a matter later treated, we find, without detailing it, that there was substantial competent evidence to support the finding.

Under a complaint that no compensation whatsoever was due claimant, appellants review at length the facts as to the injury to the left leg, and that in treating it, it became necessary to take the bone grafts from the right os ilii on January 14, 1947, and argue that it is elemental in workmen's compensation cases that an injury to be compensable must be occasioned by an accident arising out of and in the course of employment (citing *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 181, 211 P. 2d 89); that the injury to the right os ilii was the result of surgery and did not occur during the course of the employment, and therefore no compensation was due on account thereof. In connection with this argument appellants contend that when the operation of January 14, 1947, was performed, they had theretofore exceeded the maximum obligation imposed upon them by the compensation act as then in force; that such additional medical attention was not compensation and that claimant "desired" the surgery to reduce the disability in his left leg, and, in sum, that such self secured treatment constituted an independent, intervening cause of the injury to the right os ilii.

This contention ignores the fact that in January, 1947, claimant was being paid compensation as such; that the medical, surgical and hospital treatment appellants were affording the claimant would probably inure to their benefit and insofar as it assumes claimant "desired" the operation, is not borne out by the record. In support of their position generally, appellants rely on *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 403, which involved the effect of incompetent or negligent treatment of the claimant's injuries with the result that his disability, which would otherwise have been

merely temporary was rendered permanent, and where it was held that so much of claimant's incapacity as was the result of unskillful medical treatment did not arise out of and in the course of his employment, and to the later cases of *Dinoni v. Vulcan Coal Co.*, 132 Kan. 810, 297 Pac. 721, and *Cooke v. Bunten*, 135 Kan. 558, 11 P. 2d 1016, where the rules was approved or reaffirmed. Apparently in the trial court appellee relied on our decision in *Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808, where the claimant sustained a hernia which necessitated an operation as a result of which "milk-leg" developed. In affirming a judgment for the claimant it was said:

"Defendant contends that, if plaintiff sustained any injury in the course of his employment, it was the hernia, that the hernia was cured by the treatment and operation; that the 'milk-leg' was caused entirely by the operation for hernia; that, therefore, the 'milk-leg' was not an accident arising in the course of plaintiff's employment; and that plaintiff cannot recover. The defendant relies on the case of *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 437. In that case, however, it was said:

" 'The evidence shows that the permanent character of his (Plaintiff's) incapacity is actually the result, not of the injury received while working for the defendant, but of improper surgical treatment.' (p. 180)

"In this case there is no claim that the 'milk-leg' was caused by improper surgical treatment or malpractice. The injury itself is the basis of complaint. While a reasonable conclusion from the evidence was that the lifting of the heavy barrel caused the hernia, that the hernia necessitated the operation, as a result of which one of the veins of plaintiff's leg was dammed or the flow of blood materially restricted, there was evidence 'that the milk-leg could be caused by an injury.' In either case the original injury was the contributing cause, if not the direct cause of plaintiff's condition. From the 600-pound barrel through the various stages to the 'milk-leg,' each step was the natural inducement of the next. The result was plaintiff's condition, from which he will be partially incapacitated, perhaps for life." (l. c. 279)

The conclusion of this court is reflected by ¶ 2 of the syllabus, which recites:

"Under the circumstances outlined in the foregoing paragraph it is held that, although the plaintiff's incapacity was immediately due to the 'milk-leg,' yet that malady was directly traceable to the hernia sustained in defendant's service and to the consequent results of the necessary treatment to cure the hernia; and the plaintiff's resultant incapacity entitled him to compensation."

Appellants argue that the instant case is more comparable to and should be controlled by the Ruth case rather than the Bidnick case, and that under the Ruth case the injury to claimant's right os ilii is not an injury and is therefore not compensable.

In addition to the above cases appellants direct attention to *Champerlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684, and other cases and distinguish them from the case at bar. We think it unnecessary to review those, cases. They also cite *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271, where the claimant sought recovery for a scheduled injury as well as for other injuries to his shoulder, neck and head. On the hearing it developed that the only testimony as to the last mentioned injuries was that the additional incapacity caused by them was caused by a causalgia condition directly related to and arising from the scheduled injury. It was held that there could not be recovery for both the scheduled and unscheduled injuries, and an award which included the latter was ordered modified. Referring to Duncan, appellants say he "suffered injuries to scheduled members," then treat his injury as though it were a scheduled injury, which we hold it was not, and say that the analogy between his case and the Riggan case is readily apparent.

In our opinion the present proceeding comes within the rule of the Bidnick case, a sufficient reference to which has been made, and to cases where the rule of that case has been recognized or followed. (*Edgar Zinc Co. v. Hamer*, 130 Kan. 58, 285 Pac. 550; *Dinoni v. Vulcan Coal Co.*, supra; *Evans v. Western Terra Cotta Co.*, 145 Kan. 924, 67 P. 2d 426; *Rogers v. Board of Public Utilities*, 158 Kan. 693, 149 P. 2d 632.) The evidence in this case did not disclose that a merely temporary disability was rendered permanent by the operation of January 14, 1947, nor that that operation was performed unskillfully or negligently. There was some dispute as to whether bone spurs would grow and protrude into the fleshy portions surrounding the place on the right os ilii from which the bone grafts were removed to perform the barrel stave grafts on the left leg but that dispute was resolved in favor of the appellee and against the appellants by the trial court and is not open to review now. Further, it cannot be said as a matter of law that the removal of bone grafts from the right os ilii constituted an independent, intervening cause of injury. The treatment of appellee's left leg, up to the time the barrel stave graft was made, had not resulted in a union of the leg bones, and to accomplish that the operation of January 14, 1947, was performed—it was a necessity growing out of the original injury and the disability arising from its performance was a natural result, even though such a result might not always follow. The disability was directly traceable to the injury to the left leg and to the

consequent result of the necessary treatment to repair the injuries to that leg.

In our opinion the evidence disclosed the disability in appellee's right hip, caused by the removal of bone grafts was a closely connected consequence of the primary injury to his left leg, did result from an accident arising out of and in the course of his employment, and constituted sufficient substantial evidence to uphold the award made. The appellants' contention that no compensation whatever is due claimant cannot be sustained.

The judgment of the trial court in case number 38,220 is affirmed.

We now take up the second appeal. As has been noted above, the award of the compensation commissioner was made on January 30, 1950. At the hearing leading up to that award there was some evidence offered by appellee that the appellee's disability would be reduced by an operation on his right leg to remove the bone spurs on his right os ilii. The commissioner stated in the history of the case that appellee was in need of further medical care to reduce his disability but that appellants had not offered such medical attention. Reference to the matter is not made in the findings or award. On January 31, 1950, appellants served notice of appeal to the district court, which notice was filed February 1, 1950.

On February 27, 1950, appellants filed with the workmen's compensation commissioner their petition for review in which they referred to the above statement as to further medical care, to their appeal from the award and then alleged they made a gratuitous award of surgery on February 9, 1950, as shown by a copy of a letter attached, and that they received in response a letter dated February 10, 1950, copy of which was attached, which, although ambiguous and difficult of interpretation, could only be interpreted as a denial; that the surgery recommended by appellee's medical witness would require certain stated things to be done and that the probability of a permanent cure was large and the danger to life small and because of appellee's unreasonable refusal of such surgery, appellants should be relieved of obligation to pay any and all compensation under the award. They further alleged that the refusal of appellee to accept the surgery tendered was evidence of and demonstrated that the application for compensation was filed in bad faith and by reason thereof they should be relieved of obligation to pay any and all compensation under the award.

The letter of February 9, 1950, offered surgery to remove bony

spurs from appellee's right os ilii, but stated further it was a voluntary offer over and above the maximum costs provided in the compensation act, did not constitute an admission by appellants that any decisions, findings, awards or rulings of the commissioner, whether of law or of fact, made in the case were valid and that their validity was specifically denied. Appellee's answer of February 10, 1950, to appellants' offer stated he neither accepted nor refused for the reason the tender made was not in accordance with the compensation act; was not made until after the hearing was completed and the award made; was in violation of the act in that appellants specifically denied liability for the compensation found to be due and to become due, and failed to provide for medical bills, hospital bills, transportation of appellee or for payment of compensation of appellee during disability, or other detailed expenses; that no tender was made during the hearing and the same could not be ordered by the commissioner, and other reasons not necessary to detail.

On hearing the petition for review the compensation commissioner stated that an award had been made from which an appeal had been taken and was pending, expressed the opinion that the district court had jurisdiction of the questions of law and fact as presented and shown by the transcript of the evidence and proceedings before the commissioner and sustained the appellee's objections to a hearing. Appellants promptly appealed to the district court. The district court heard the appeal and found that the petition for review was not such as is contemplated by G. S. 1947 Supp. 44-528; that the attempted review was in the nature of a motion for a new trial and such a procedure is not provided in the workmen's compensation act; that the commissioners was without jurisdiction to hear the matter and the district court acquired no jurisdiction on appeal and the appeal should be dismissed; and it ordered the appeal dismissed. In due time the appellants perfected their appeal to this court.

The gist of appellants' contention that the trial court erred is that the workmen's compensation act provides its own procedure and furnishes a substantial, complete, and exclusive remedy from inception of the claim to final judgment thereon, citing *Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P. 2d 78, and *Brewington v. Western Union*, 163 Kan. 534, 183 P. 2d 872, and that may be conceded; that the statute providing for review (G. S. 1947 Supp. 44-528) states such review may be had "at any time before but not after the final payment has been made . . ."; that the statute

means exactly what it says, citing *Gilbert v. Independent Construction Co.*, 121 Kan. 841, 250 Pac. 261, and *Doss v. Cornelison & Kelly*, 124 Kan. 631, 261 Pac. 584; and that therefore the award may be reviewed at any time. The two cases last cited did not involve any attempt to have a review while an appeal from an award was pending and are no authority on that point.

We shall not isolate and decide the single question whether the appellants from an award made by the compensation commissioner, may, while that appeal is pending, petition the compensation commissioner for a review of that award. The petition for review now before us does come within such a time, but an examination of its allegations discloses that what petitioners seek is a hearing before the commissioner of their contention that the claimant by refusing their belated offer of surgery is not entitled to any compensation. They made no timely offer before the commissioner, and their offer after the award was made was coupled with a denial of the validity of the award, without any offer to pay compensation pending review and without any allegation of any changed condition of the claimant which rendered the award excessive. There is no allegation in the petition for review that the award was obtained by fraud or undue influence, was made without authority or as the result of misconduct or that incapacity of the claimant workman was diminished. If it can be said there was any claim made the award was excessive, it would be the same claim as is included in the pending appeal from the award, and at least to that extent would be only a petition or motion for a rehearing of the award.

Although the factual situation giving rise to the discussion was different, this court, in reference to the review provision, said in *Brewington v. Western Union*, supra:

"The purpose of this statute has been considered on many occasions as reflected by the numerous decisions collected thereunder. Its purpose, as expressly stated in the statute, is to permit the commissioner to 'modify such award upon such terms as may be just . . .' in order to conform to changed conditions.

"The modification of the award of the district court by the commissioner is in no sense a review of the former judgment of the district court. The modification authorized is based on the existence of new facts, a changed condition of the workman's capacity, which renders the former award either excessive or inadequate." (l. c. 537.)

We conclude the instant petition was not sufficient under the statute and that the trial court did not err in so holding.

The last contention made by the appellants is that the relief prayed for in their petition for review should have been granted. A full answer to this contention is that it having been held the petition for review was insufficient there is no need to discuss the argument made under this heading.

The judgment in appeal No. 38,221 is affirmed.