No. 46,816

MARVIN BERGER, *Appellant,* v. HAHNER, FOREMAN & CALE, INC., and EMPLOYERS FIRE INSURANCE COMPANY, *Appellees.*

(506 P. 2d 1175)

Opinion filed March 3, 1973.

*Raymond Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner* and *Tom Kelly,* of Turner, Chartered, of Great Bend, were with him on the brief for the appellant.

*Jerry Ward,* of Hampton and Ward, of Great Bend, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by claimant in a workmen's compensation case. The workmen's compensation examiner, director and the district court found that the injury sustained by claimant was a scheduled injury and that claimant was entitled to the benefits provided for the loss of an eye set out in K. S. A. 1972 Supp. 44-510d (17). Claimant was awarded 120 weeks of compensation at the rate of $49.00 per week in the total sum of $5,880.00 and medical services received and to be received in the future not to exceed $8,500.00. The award was affirmed by the workmen's compensation director and adopted and affirmed by the district court on appeal.

The issue is whether compensation must be limited to the statutory amount provided for the scheduled injury, notwithstanding evidence which the district court found established that claimant had suffered traumatic neurosis or emotional overlay to such a degree that he was disabled.

The facts are undisputed. At the time of his injury, claimant was a fifty-three year old crane operator who had performed this type of work for thirty-two years. He testified that in the past he had experienced a heart condition which prevented heavy labor, but that prior to his injury he was able to do all the things connected with his job.

On the day of the accident, July 25, 1969, claimant was setting columns with the crane which he was operating. He completed this work about 4:30 p. m., left the crane and started to help carpenters on the construction job. While working with the carpenters, claimant was struck in the right eye by the end of a 2 x 4 board. He was treated by Dr. Robert Polson, M. D., an ophthalmologist. Dr. Polson testified that the injury was healed by August 8, 1969, but the vision in the eye "was less than 22 hundredths" and that in effect the claimant had lost the useful vision of one eye.

Claimant returned to his job as a crane operator for respondent and continued to work until January 2, 1970, when he was laid off for lack of work. Since that date, according to his testimony, claimant has been unable to obtain employment.

Claimant testified that he thought he could still operate a crane if it were a good one, but he could not do any heavy manual labor because of his heart condition. The examiner further summarized claimant's testimony:

". . . He has had difficulty sleeping since this accident and is up two or three times during the night. He does not know what he will do unless he can find someone that will hire him. He feels that he has trouble getting along with anyone now and thinks it is all in him and not the fault of anyone else."

Claimant's wife testified that her husband had always been a good operator and was proud of his work, but now he sits around, stares and sometimes cries, has severe headaches, and has said that he would be better off dead.

Dr. Karl K. Targownik, M. D., testified that he conducted a psychiatric interview with claimant and his wife on May 23, 1970. In summary, Dr. Targownik found claimant to be "strongly preoccupied with his fate and worried about the future" and that he had suffered "a severe reaction of guilt, anxiety and apprehension

as a result of the loss of his eye and the resulting economic problems." Dr. Targownik concluded that "claimant was approximately 100% disabled from a psychiatric point of view, and definitely in need of psychiatric treatment."

Dr. C. J. Kurth, M. D., examined claimant on behalf of the respondent and carrier on July 25, 1970. He administered a number of psychological tests. Dr. Kurth concluded that claimant's depression was sufficiently severe that if it continues, hospitalization is imminent; that claimant's condition was aggravated by the traumatic loss of sight; and that the testing indicated that he was withdrawing from reality at a progressive rate and was in rather urgent need of psychiatric treatments.

The examiner stated that he was fully convinced that claimant had become a very sick man and may, in fact, eventually lose contact with reality, but under the law his claim must be treated as a scheduled injury.

The examiner noted that the compensability of disabling conversion hysteria or traumatic neurosis has long been recognized in this state; and further that where a scheduled injury is combined with other injuries recovery for general bodily disability is not precluded. He concluded, however, that in such circumstances, this court has apparently required a showing of some, however slight, physical trauma to a nonscheduled portion of the anatomy to support the general disability. The examiner cited *Bowman v. Bushman Construction Co.*, 183 Kan. 671, 331 P. 2d 883; *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271; and *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228. On review the director agreed with the examiner's finding that claimant's disability must be treated as a scheduled injury and compensation limited accordingly.

The trial court adopted the award and the legal reasoning of the examiner. In its memorandum decision the trial court further observed:

"This Court has no doubt that the Claimant does have the traumatic overlay and that he can no longer perform the work as a crane operator, however, unfortunate as it is, the Workmen's Compensation Act of Kansas and Decisions of our Supreme Court have never held that a traumatic neurosis being the aftermath of a scheduled injury can be considered by the Examiner of the Court as a general bodily disability.

"The Court believes that the citations set forth in the award properly reflect the law of the state of Kansas and as herein before set forth the Court adopts the award intentive and affirms the same.

"Perhaps some day the Legislature in their wisdom will make provisions for cases such as the one presently before the Court, but until such is done this Court must follow the law as laid down by the Supreme Court and as this Court understands the same."

The reasoning of the trial court appears to be that even though claimant is suffering a general bodily disability by reason of traumatic neurosis which stemmed from his primary injury and developed to such a degree that he is disabled, nevertheless, the claim must be limited to a scheduled award for the reason that this court has never held that traumatic neurosis, following a scheduled injury, is compensable. The trial court is correct in the analysis of our decisions, but fails to note that we have never held to the contrary —the fact being that heretofore the precise question has never been presented. Since the facts are undisputed the case presents a pure question of law. (*Elliott v. Ralph Construction Co.*, 195 Kan. 723, 408 P. 2d 584; and *Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 309 P. 2d 681.) It clearly appears from the findings of the examiner and the trial court that compensation for temporary total disability was denied, not because it was not established by the evidence but because each concluded it was prohibited by law.

It is firmly established in this jurisdiction that traumatic neurosis, following physical injury and shown to be directly traceable to the injury, is compensable under the Workmen's Compensation Act. (*Jacobs v. Goodyear Tire & Rubber Co.*, 196 Kan. 613, 412 P. 2d 986; *Hayes v. Garvey Drilling Co.*, 188 Kan. 179, 360 P. 2d 889; *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106; and *Morris v. Garden City Co.*, 144 Kan. 790, 62 P. 2d 920.) The rule in this jurisdiction is in line with that followed generally. In this connection Vol. 1A Larson Workmen's Compensation Law, § 42.22, p. 622.162 has this to say:

". . . [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. . . ."

We pause to note that the terms "conversion hysteria," "conversion overlay" and "traumatic neuroses" are used synonymously with reference to a condition following a physical injury. (*Barr v. Builders, Inc.*, supra.)

It is true, of course, as argued by appellees, that compensation for scheduled injuries is provided in our statute (K. S. A. 1972 Supp. 44-510d) to prevent claims for total permanent disability by a work-

man who is injured only in some part of his body for which the schedule provides the sole compensation. ( See *Crouse v. Wallace Manufacturing Co.,* 207 Kan. 826, 486 P. 2d 1335, and cases cited therein.) But where a workman sustains an injury for which a scheduled compensation is payable, it does not follow that in the same accident he may not have sustained other injuries which, alone or combined with the scheduled injury, totally incapacitate him. ( *Barr v. Builders, Inc.,* supra, and *Morris v. Garden City Co.,* supra.)

In the recent case of *Jackson v. Stevens Well Service,* 208 Kan. 637, 493 P. 2d 264, claimant suffered scheduled injuries to the right hand and to the index finger of the left hand and also an injury to the right shoulder which contributed to his disability. The trial court, as in the case at bar, stated that it was prevented from granting a temporary total disability award by reason of *Wammack v. Root Manufacturing Co.,* 184 Kan. 367, 336 P. 2d 441; and *Rogers v. Board of Public Utilities,* 158 Kan. 693, 149 P. 2d 632.) Those cases and others, many of which are cited by appellees herein, were discussed in the *Jackson* opinion and held not to require an application of the limiting statute. There we held:

"When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." ( Syl. ¶ 1.)

It is true that in the *Jackson* case, as well as in other cases where compensation in addition to that provided for a scheduled injury has been awarded, there was some, even though slight, physical injury in addition to the scheduled injury. For example in the *Jackson* case, claimant suffered injury to his right shoulder in addition to the scheduled injuries to his right hand and left index finger. Among other cases in which we approved compensation for disability, in addition to that awarded for a scheduled injury, are *Reed v. Clay Center Concrete & Sand Co.,* 184 Kan. 374, 336 P. 2d 405; *Duncan v. Davidson Construction Co.,* 170 Kan. 520, 227 P. 2d 95; and *Bidnick v. Armour & Co.,* 113 Kan. 277, 214 Pac. 808.)

We adhere to our previous interpretations of the provisions of K. S. A. 1972 Supp. 44-510d (23) and its predecessors that when a specific injury and disability is a scheduled injury under the Workmen's Compensation Act, the benefits provided under the schedule are exclusive of any other compensation. The question in the instant case, however, concerns the application of the statutory

limitation to a further disability directly traceable to and resulting from the original injury.

The statutory limitation of benefits for a specific injury is applicable where the disability stems only from the injury or injuries specifically scheduled. This point is made in the case of *Rogers v. Board of Public Utilities,* supra, wherein the limiting rule was said to be applicable:

". . . [U]nless, of course, it appears from the evidence his subsequent disability, irrespective of whether it was temporary or permanent, was so unusual and extraordinary, within the meaning of those terms as used in decisions presently referred to as to justify an additional award beyond the statutory schedule. . . ." (p. 697.)

Additional compensation was not allowed in the *Rogers* case because the opinion written by Mr. Justice Parker carefully points out the claimant's injuries consisted of the scheduled injuries and no other injuries whatsoever.

The exception to the limiting effect of the statute referred to in the *Rogers* case is further illustrated by the case of *Richards v. J-M Service Corp.,* 164 Kan. 316, 188 P. 2d 939, wherein claimant suffered a hernia, a scheduled injury, followed by a reoccurrence of the hernia and other complications. In an opinion written by Mr. Justice Burch, the court addressed itself to the contention of the respondent, that compensation must be limited to the schedule in these words:

". . . It is apparent from the entire record the district court concluded from substantial evidence that as a result of the accident the claimant sustained a total disability which would continue for an indefinite period—not as a result of the hernias alone—but also as a result of the activation and aggravation of a stomach ulcer and other conditions which later caused the claimant to develop auricular fibrillation in his heart. In such circumstances it does not follow that merely because a scheduled injury may be a factor in complete disability, claimant's recovery is limited to the amount allowed by the statute for the scheduled injury." (p. 323.)

In the case at bar, the uncontroverted medical evidence shows that claimant suffered a general bodily disability by reason of traumatic neurosis; he was described by the examiner as a very sick man and according to the trial court no longer able to perform his work. In such circumstances, it does not follow that merely because a scheduled injury was the precipitating factor in his complete disability, claimant's recovery should be limited to the amount allowed by the statute for the scheduled injury.

In *Morris v. Garden City Co.,* supra, claimant's injury from the

same accident was to the foot and head. The injury to the foot was severe; the head injury was described as slight, but the combined effect was to shatter his nerves. In the opinion we said:

". . . He is a neurotic, totally incapacitated for work. Under the evidence and the findings of the trial court there is no room to say compensation should be limited to that for a scheduled foot injury." (p. 792.)

The claimant's condition, as in the instant case, was characterized as traumatic neurosis for which he was awarded compensation for temporary total disability.

The only difference between *Morris* and the case at bar is that in *Morris* the claimant suffered a slight head injury in conjunction with the scheduled injury. In the case at bar, claimant suffered a scheduled injury to his right eye, it was not accompanied by an injury, even slight to his head, but by the undisputed medical testimony he has become, as claimant in *Morris,* totally incapacitated for work by reason of traumatic neurosis, directly traceable to and resulting from the original injury. We see no reason—legal or logical—to use the scheduled injury status as a vehicle to deprive a workman of compensation who became totally disabled from a traumatic neurosis merely because it resulted from a scheduled, rather than a nonscheduled, injury.

It should be understood that according to the medical testimony, as interpreted by the examiner and the trial court in this case, the traumatic neurosis which progressed to a disabling degree was distinct and apart from the scheduled injury itself, as originally sustained, but resulting from its sufferance. The disabling neurosis here is to be distinguished from additional incapacity following a scheduled injury which is caused by a causalgia condition such as in *Riggan v. Coleman Co.,* supra, cited by appellees. In *Riggan* claimant suffered the permanent loss of the use of his right arm, a scheduled injury. Following the injury, claimant suffered extreme pain in his shoulder, head and neck, resulting in severe headaches and additional incapacity. In the opinion it was said that according to the medical testimony claimant's pain in his shoulder, neck and head—

". . . [W]as referred there from the injured member of his body and caused by a condition known as causalgia which is a very common accompaniment of severe injury where there is either nerve or blood vessel injury to an extremity." (p. 236.)

The causalgia condition referred to in the *Riggan* case was dis-

tinguished from claimant's condition in *Jackson v. Stevens Well Service*, supra, in this manner:

"This case is distinguishable. The testimony here reveals that the claimant suffered from biciptal tendonitis of the right shoulder and atrophy of the right arm as a direct result of the injury and not as a referred pain or discomfort resulting from the injury to a scheduled member. The disability in the *Riggan* case fails to meet the requirement that the subsequent complication must be distinct and apart from the scheduled injury." (p. 643.)

The *Riggan* case stands for the proposition that compensation for additional incapacity caused by a causalgia condition directly related to a primary scheduled injury is precluded by the statute. In the opinion it is carefully pointed out:

". . . This is not a case where, as in decisions relied on by appellee in support of its position (*i. e., Fernandez v. Edgar Zinc Co.*, 138 Kan. 735, 27 P. 2d 239; *Morris v. Garden City Co.*, 144 Kan. 790, 62 P. 2d 920) the accident in question caused two separate and distinct injuries. . . ." (p. 237.)

In the instant case, the accident caused the scheduled injury and also the traumatic neurosis, a separate, distinct and compensable injury which was a direct and natural result of the primary injury. There is no evidence, medical or otherwise, indicating that claimant's incapacity resulted from a causalgia condition. The rule of *Riggan* pertaining to causalgia is inapplicable.

Likewise, other cases cited by appellees are distinguishable in that where compensation in addition to that allowable for one or more specific scheduled injuries was denied, the decision was based on the fact that disability stemmed only from the specific scheduled injury.

*Wammack v. Root Manufacturing Co.*, supra, dealt with injuries to both of claimant's thumbs. We held that claimant was entitled to compensation for each of the scheduled injuries, but since claimant's injuries were limited to two thumbs it was further held:

"When a workman is entitled to compensation for thumb injuries, scheduled under the subdivisions of the section of the statute referred to in the preceding paragraph of this syllabus, and such injuries consist of scheduled ones and *of them alone*, the compensation authorized under the terms of such subdivisions for disability resulting from such injuries is exclusive of all other provided for in the compensation act, and the commissioner or trial court is without jurisdiction to make an award on any other basis than that provided for therein." (Syl. ¶ 2.) (emphasis supplied.)

In *Bowman v. Bushman Construction Co.*, 183 Kan. 671, 331 P. 2d 883, compensation was limited to the schedule and temporary total

disability during the period of time claimant was unable to work on account of the hernia, but the opinion points out—

". . . In this case there are no facts before the court except that claimant suffered *only a hernia* as a result of the injury. . . ." (p. 674.)

Appellees stress *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228, as authority for the assertion that in the absence of evidence of injury beyond that listed in the schedule a finding that claimant is entitled to general disability benefits would be directly contrary to the expressed limitation of the legislature and would render the provision for the loss of an eye a nullity. In *Cornell* claimant suffered fractures of both bones of the right leg just above the ankle, which resulted in a "sixty-per-cent loss" of the use of his right foot for which scheduled compensation was awarded. Before the last payment of scheduled benefits was paid claimant petitioned for a review. He was reexamined medically and no material change was found in his foot, but evidence was developed that claimant would always walk with a limp. Claimant contended in his petition for review that the original award should be modified to an award for permanent partial disability instead of the partial loss of the use of his foot, which was denied by the commissioner and the trial court. This court rejected claimant's appeal on three grounds, the third of which is stressed by claimant herein. It reads:

"(3) Fundamentally, almost any scheduled injury under our workmen's compensation law produces some—perhaps slight, although it may be substantial—unnatural result upon normal bodily functions. If it were to be held that all such results constituted generally partial disability under the statute there would be little or no purpose in having scheduled injuries. . . ." (p. 609.)

The thrust of the *Cornell* decision is that the effect upon normal bodily function of a specific scheduled injury is not compensable. The case of *Gallivan v. Swift & Co.*, 136 Kan. 234, 14 P. 2d 665, was decided on the same rationale. We have no quarrel with the reasoning expressed in the *Cornell* and *Gallivan* decisions. However, as pointed out in *Morris v. Garden City Co.*, supra, where a workman sustained a scheduled injury it does not follow that in the same accident he may not have sustained other injuries which, along or combined with the scheduled injury, totally incapacitate him.

In the instant case, claimant's incapacity does not stem from the effect of his eye injury upon his normal bodily function, but rather from the traumatic neurosis, a separate and distinct disability even though it is a direct and natural result of the primary injury.

Medical testimony in the instant case recognizes that a psychological reaction following the loss of use of a member of the body is a normal and expected consequence. But both medical examiners indicated in their testimony that most individuals compensate for their loss and overcome the reaction. However, some, such as claimant herein, do not compensate and develop a traumatic neurosis or conversion hysteria which creates temporary, and sometimes permanent, total disability. Claimant did not compensate mentally and his condition developed into traumatic neurosis which is compensable under the law of this jurisdiction.

Even though this court has long held that traumatic neurosis is compensable; we are fully aware that great care should be exercised in granting an award for such injury owing to the nebulous characteristics of a neurosis. An employee who predicates a claim for temporary or permanent disability upon neurosis induced by trauma, either scheduled or otherwise, bears the burden of proving by a preponderance of the evidence that the neurosis exists and that it was caused by an accident arising out of and during the course of his employment.

In view of the trial court's finding that claimant was suffering a general bodily disability from traumatic neurosis resulting from claimant's primary injury; we conclude it erred in not entering an award for total temporary disability.

The cause is reversed and demanded with directions to proceed in accordance with the views expressed herein.

FROMME, J., dissenting: This court has taken a thorny path fraught with many future difficulties. I am unable to distinguish between incapacity resulting from a "causalgia" condition directly related to and arising from the loss of a scheduled member and a "psychological overlay" directly related to and arising from the loss of a scheduled member. Both terms indicate a neurosis which arises from trauma. Both are a form of "conversion hysteria" arising from trauma.

As pointed out in *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228:

". . . Fundamentally, almost any scheduled injury under our workmen's compensation law produces some—perhaps slight, although it may be substantial—unnatural result upon normal bodily functions. If it were to be held that all such results constituted general partial disability under the statute there would be little or no purpose in having scheduled injuries. As to this the case

is ruled by the holding of the court in *Gallivan v. Swift & Co.*, 136 Kan. 234, 14 P. 2d 665, and allied cases." (p. 609.)

In *Riggan v. Coleman Co.*, 166 Kan. 234, Syl. ¶ 2, 200 P. 2d 271, this court held that an additional incapacity which is caused by a "causalgia" condition directly related to and arising from loss of use of a scheduled member is not compensable. See also *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, Syl., 297 Pac. 688, in which a "sympathetic affliction" is held not compensable.

Today this court holds that a "psychological overlay", "conversion hysteria" or a "traumatic neurosis" directly related to and arising from loss of an eye (a scheduled member) may be compensable as a total temporary disability.

The thorny path we take now dictates we distinguish these terms for the benefit of the examiner, the director, the bench and the bar. Either we should now do so or we should overrule our "causalgia" and "sympathetic affliction" cases.

Under the facts of the present case there is a sound basis for upholding the award of the examiner not considered by the court but inherent in the facts of the case. The injury to the eye occurred in July, 1969. After three days the claimant returned to his work and performed his duties operating a crane until January 2, 1970. Traumatic neurosis like any other compensable disability must have a direct causal connection between the injury and the neurosis. As I view the medical testimony this unfortunate claimant became disabled more than six months after he was laid off, but his condition was the result of other factors; including the lay-off from work, and arose from anxiety, apprehension and economic problems which had their inception in his lack of a job. The claimant testified before the examiner and his testimony was transcribed in the record as follows:

"He feels that he could still operate a crane if it is a good one, but he just can't do heavy manual labor because of his heart condition. . . . He does not know what he will do unless he can find someone that will hire him. . . ."

This is a case of post-traumatic neurosis arising at least six months after a scheduled injury and is not compensable because of the lack of causal connection. (Cf. *Phelps Dodge Corp. v. Industrial Com.*, 46 Ariz. 162, 49 P. 2d 391.)

The majority opinion in this case is based upon an erroneous premise that the psychological overlay was precipitated by a

scheduled injury to the eye, a fact not supported by the evidence and not found by the lower court. The judgment of the examiner, the director and the district court should be affirmed.

One additional matter deserves comment.

The award of the examiner, which was approved by the director and the district court, was based upon the scheduled injury section of the act (K. S. A. 44-510d as amended) which provides in part:

". . . If there is an award of permanent disability as a result of the injury there shall be a *presumption that disability existed immediately after said injury* and compensation is to be paid for not to exceed the number of weeks allowed in the following schedule: . . ." (Emphasis added.)

Because of the foregoing statutory presumption it was not necessary for the examiner or the trial court to determine when the disability began in order to award compensation for the loss of the sight of one eye.

Now, however, this court has ordered an award for total temporary disability under 44-510c which in my opinion requires a determination of when the total temporary disability began.

When did the claimant's total temporary disability begin? The injury occurred July 25, 1969. He was off work three days. He returned to the job and continued to work as a crane operator until January 2, 1970 (a period of almost six months). Then he was laid off—not because of his injury but because of lack of available work. He was looking for work as late as March 15, 1970. When then did this "causalgia" or "conversion hysteria" set in? The medical testimony is based upon interviews with the claimant and his wife in May and July, 1970. The medical testimony is based upon social history and tests made. I discern nothing in the record from which the trial court or this court can determine the date of the inception of this disability. This court should direct the trial court on how to proceed to determine that question.